## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY SILVIS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMBIT ENERGY, L.P.;<br>AMBIT ENERGY, L.P., i/t/d/b/a<br>AMBIT TEXAS, LLC; AMBIT TEXAS, LLC;<br>AMBIT NORTHEAST, LLC;<br>AMBIT NORTHEAST, LLC, i/t/d/b/a<br>AMBIT ENERGY; AMBIT ENERGY;<br>AMBIT ENERGY HOLDINGS; AMBIT ENERGY<br>HOLDINGS i/t/d/b/a AMBIT NORTHEAST, LLC;<br>AMBIT HOLDINGS, LLC; AMBIT HOLDINGS,<br>LLC<br>i/t/d/b/a AMBIT ENERGY HOLDINGS, LLC;<br>AMBIT ENERGY HOLDINGS, LLC, i/t/d/b/a<br>AMBIT ENERGY; and AMBIT ENERGY<br>HOLDINGS, LLC, i/t/d/b/a AMBIT,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>No.: _____<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

**AND NOW,** Plaintiff Amy Silvis brings this action individually and on behalf of all

others similarly situated (the Class), and alleges as and for their Class Action Complaint against:

Ambit Energy, L.P.; Ambit Energy, L.P., i/t/d/b/a Ambit Texas, LLC; Ambit Texas, LLC; Ambit

Northeast, LLC; Ambit Northeast, LLC, i/t/d/b/a Ambit Energy; Ambit Energy; Ambit Energy

Holdings i/t/d/b/a Ambit Northeast, LLC; Ambit Holdings, LLC; Ambit Holdings, LLC i/t/d/b/a

Ambit Energy Holdings, LLC; and Ambit Energy Holdings, LLC, i/t/d/b/a Ambit Energy; and

Ambit Energy Holdings, LLC, i/t/d/b/a Ambit (hereafter collectively referred to as Defendants),

upon personal knowledge as to herself and her own acts, and as to all other matters upon

1

information and belief, based upon, *inter alia*, the investigation made by her attorneys, as
follows:

## INTRODUCTION

1.      This is a proposed class action brought by Plaintiff on behalf of herself and other
like customers of Defendants.  Defendants have and continue to engage in deceptive marketing and
billing practices.  Defendants promise customers competitive market-based rates and savings on
their electric energy bills if they switch from their incumbent local utilities or other energy suppliers
to Defendants' electric energy services.

2.      However, Defendants' representations are a bait-and-switch scheme.  Defendants
routinely charge their customers rates that are well above the market.  A customer may end up
paying two to three times more for electricity than what he or she paid before converting to Ambit.
Instead of benefitting from switching to Ambit, a typical customer loses hundreds or even
thousands of dollars per year.  Thus, Defendants deceptively cause their customers to pay
considerably more for energy than they should have, and otherwise would have, paid.  Defendants'
acts and/or omissions in connection with their energy supply activities constitute breach of contract
and unjust enrichment and warrants declaratory relief.

## PARTIES

3.      Plaintiff Amy Silvis is an adult individual and a resident of Oil City, Venango
County, Pennsylvania.  Ms. Silvis began receiving service from Defendant Ambit on April 12,
2013.  See screen capture of Ms. Silvis' Ambit Energy Activation Date notification below.

4.       Ambit Energy, L.P., is a Texas Limited Partnership with its principle place of business located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.  On or about August 15, 2011, Ambit Energy L.P. merged with Ambit Texas, LLC.  The President of Ambit Energy, L.P. is Jere W. Thompson, Jr., whose office is located at the same address as Ambit Energy, L.P.  It is believed and therefore averred that Ambit Energy, L.P. is a residential and commercial retail energy supplier and/or electric generation supplier.  It is further believed and therefore averred that at all times relevant to the instant action, Ambit Energy, L.P. systematically and continuously conducted business throughout the Commonwealth of Pennsylvania.

5.       Ambit Texas, LLC, is a limited liability company organized in the State of Texas with its principle place of business located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.  Ambit Energy L.P., is the managing member of Ambit Texas, LLC, and Jere W. Thompson is its President.  It is believed and therefore averred that Ambit Texas, LLC, is a residential and commercial retail energy supplier and/or electric generation supplier.  It is believed and therefore averred that at all times relevant to the instant action, Ambit Texas, LLC, systematically and continuously conducted business throughout the Commonwealth of Pennsylvania.

3

6.     Ambit Northeast, LLC, is a limited liability company formed in Delaware with a principle place of business located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.  It is believed and therefore averred that Ambit Energy Holdings, LLC, owns 100% of Ambit Northeast, LLC.  It is believed and therefore averred that Ambit Northeast, LLC, is a residential and commercial retail energy supplier and/or electric generation supplier.  It is believed and therefore averred that at all times relevant to the instant action, Ambit Northeast, LLC, systematically and continuously conducted business throughout the Commonwealth of Pennsylvania.

7.     Ambit Energy is a fictitious name registered in Pennsylvania and is owned by Defendant Ambit Northeast, LLC.  However, on July 18, 2008, Ambit Energy Holdings, LLC, filed an Assumed Name Certificate with the Texas Secretary of State to conduct business or provide professional services under the name Ambit Energy.  Ambit Energy's registered agent is Jere W. Thompson, Jr., with a registered office address of 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.  It is believed and therefore averred that Ambit Northeast, LLC and Ambit Energy Holdings, LLC, are residential and commercial retail energy suppliers and/or electric generation suppliers.  It is believed and therefore averred that at all times relevant to the instant action, Ambit Northeast, LLC and Ambit Energy Holdings, LLC, systematically and continuously conducted business throughout the Commonwealth of Pennsylvania utilizing the fictitious name, Ambit Energy.

8.     Ambit Holdings, LLC, is a Texas limited liability company with a principle place of business located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.  Ambit Holdings, LLC, is the sole member of and manages Ambit Energy Holdings, LLC.  It is believed and therefore averred that, at all times relevant to the instant action, Ambit Holdings, LLC, was a residential and commercial retail energy supplier and/or electric generation supplier.  It is further

believed and therefore averred that, at all times relevant to the instant action, Ambit Holdings, LLC,
systematically and continuously conducted business throughout the Commonwealth of
Pennsylvania.

9.       Ambit Energy Holdings, LLC, is a Texas limited liability company with its principal
place of business located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.  It is
believed and therefore averred that Ambit Energy Holdings, LLC, does business at times under the
names: Ambit Energy Holdings; Ambit Energy; and/or Ambit.  Ambit Energy Holdings, LLC, is
managed by its sole member Ambit Holdings, LLC, which is also located at 1801 North Lamar
Street, Suite 200, Dallas, Texas 75202.  On July 18, 2008, Ambit Energy Holdings, LLC filed an
Assumed Name Certificate with the Texas Secretary of State to conduct business or provide
professional services under the name Ambit.  Further, it is believed and therefore averred that
Ambit Energy Holdings, LLC, owns 100% of Ambit Northeast, LLC.  It is believed and therefore
averred that, at all times relevant to the instant action, Ambit Energy Holdings, LLC, was a
residential and commercial retail energy supplier and/or electric generation supplier that
systematically and continuously conducted business throughout the Commonwealth of
Pennsylvania.

## JURISDICTION AND VENUE

10.       This Court has subject matter jurisdiction of the claims asserted herein pursuant to
28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of
$5,000,000.00 exclusive of interest and costs and is a class action in which members of the putative
Class are citizens of States different from Defendants.

11.       Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391.  Defendants
regularly transact and solicit business in this District.

## OVERVIEW

12.     This lawsuit arises from a fraudulent and deceptive scheme perpetrated by Defendants.

13.     Plaintiff Amy Silvis on behalf of the class she seeks to represent brings this lawsuit to redress Defendants' unlawful and unconscionable consumer practices in Pennsylvania.

14.     In 1996, Pennsylvania deregulated energy supply in the Commonwealth.  Energy deregulation has enabled consumers to purchase their energy supply from an Energy Services Company, like Ambit, of their choice.  The intent of the deregulation law was to provide consumer choice and allow competition to drive down customer rates.  Since deregulation, the utility company is no longer the only option for energy supply.  Customers may now purchase electricity through ESCOs while continuing to obtain delivery from their local public utilities.

15.     Ambit was founded in 2006 by Jere Thompson, Jr., and Chris Chambless. Defendants are based in Texas.  Ambit now serves over 1 million electric and natural gas customers, the vast majority of whom are residential customers like Plaintiff.  While claiming on its website that, "[f]rom the big cities to the small markets, we know our Customers can count on us for the best electricity value in Pennsylvania.,"[1] Defendants neglect to mention that by choosing Ambit, customers will end up increasing rather than decreasing their energy costs each year.

16.     Defendants' practices emerge from, and take advantage of, the deregulation of the energy supply markets in Pennsylvania and other states where Defendants do business - including California, Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Hampshire, New jersey, New York, Rhode Island, Texas, Virginia and Washington D.C.  Under these States' deregulation laws, in theory, customers can freely shop around for the best price for their energy.  By engaging in its bait-and-switch scheme, Defendants subvert the consumer-friendly purpose of the laws and

---

[1] http://ww2.ambitenergy.com/rates-and-plans/service-areas/pennsylvania-energy-providers

prevent their customers from making a free, informed choice.  In reality, most customers would be far better off staying with their local utilities or another supplier than switching to Ambit.

17.     Defendants are a direct seller multi-level marketing organization that reaches its prospective lower level sellers and potential customers through internet advertising on company websites, through social media and with online presentations and conferences as well as directly through in person presentations, brochures, meetings and conference calls.

18.     Defendants sell energy supply services to potential customers in Pennsylvania and other states through a direct sales channel of more than 200,000 salespeople Defendants refer to as "Consultants."

19.     It is believed and therefore averred that Defendants charge newly recruited consultants almost $500.00 for the privilege of becoming consultants for Defendants.

20.     Defendants consultants are the primary vehicle by which Defendants sell their energy services to the public.

21.     It is believed that, in large part, Defendants recruit consultants through staged meetings where consultants, who are already affiliated with Defendants and who are trained on how and when to participate in said meetings, attempt to encourage people to become new consultants with promises of increased income and independent wealth based on their own alleged personal experiences.

22.     It is believed and therefore averred that the vast amount of training Defendants provide to their consultants consists of how their consultants can and should recruit other consultants and not on the details of the energy supply plans/rates Defendants sell to the public.

23.     Defendants take advantage of their customers in deregulated states by adopting deceptive and unconscionable business tactics.  Defendants mislead consumers into believing that by switching to Ambit they will save money.  Defendants attempt to lure customers with Free Energy, Referral Rewards and Travel Rewards programs.   Further Defendants represent that their rates will be tied to market factors and their rates will be competitive with the market.  Defendants exploit ambiguities in their representations and customer agreements to draw consumers in by creating the expectation of better than market prices that they will not realize.  The alleged value of Defendants' inducements is negligible, if nonexistent, when compared to the amounts by which Defendants overcharge their customers through their deceptive conduct and practices.

24.     It is believed and therefore averred that Defendants provide scripts for their consultants to follow when they attempt to sell Defendants' electrical supply services to the public.

25.     It is believed and therefore averred that Defendants' consultants receive more income if their customers receive larger monthly bills.   It is further believed and therefore averred that in Defendants' marketing plan, residual payments are based, in general, on the number of customers signed up and the amount of energy consumed by said customers.

26.     Plaintiff Amy Silvis brings this action on behalf of a class of Pennsylvania consumers by alleging breach of contract and, under Pennsylvania common law, breach of the covenant of good faith and fair dealing.  Plaintiff also brings a claim in the alternative for unjust enrichment.  Through its deceptive and unconscionable practices, Defendants likely over-charged the Class millions of dollars per year.  Upon information and belief, the class consists of thousands to tens of thousands of current and former customers with variable rate plans in Pennsylvania, each of whom has sustained damages of as much as hundreds or even thousands of dollars annually.

27.     Plaintiff brings this class action to recover damages, penalties and other relief for himself and the Class of Defendants' customers who have suffered damages from Defendants' imposition of unreasonable and exorbitant energy rates in violation of the Defendants' Terms and Conditions and representations.  Only a class action will provide Plaintiff and the Class with any possibility of relief. Plaintiff and the Class are therefore entitled to a class-wide remedy.

**DEFENDANTS' CONDUCT WITH RESPECT TO THEIR EXCESSIVE WIDESPREAD OVERCHARGING OF ELECTRICITY TO THE PLAINTIFF AND THE CLASS AT ISSUE IN THIS ACTION**

28.     Prior to Defendants soliciting for and switching Plaintiff's and the Class' electrical service to their company, Defendants were aware that they would be unable or unwilling to provide Plaintiff and the Class with the savings on their electric service that they promised/contracted to deliver.

29.     Defendants knew (or but for their reckless indifference would have known) that they were receiving, and were going to continue to receive, reports or complaints relating to their inability or unwillingness to deliver the savings on electric services they had promised/contracted to provide.

30.     Defendants also knew that if they properly disclosed their inability or unwillingness to provide the savings on electric supply they had promised/contracted to provide then the number of customers who utilized their services would drop significantly.

31.     Thus, Defendants knew (or but for their reckless indifference would have known) that: (a) their inability or unwillingness to provide the savings on electric supply they had promised/contracted to provide to Plaintiff and the Class was substantial and that disclosing information regarding said inability or unwillingness would cause Defendants to lose customers and market share; (b) Defendants' customers were unaware of their inability or unwillingness to provide

9

the savings on electric supply they had promised/contracted to provide; and (c) those customers had a reasonable expectation that Defendants would disclose the fact that they were unable or unwilling to provide the savings on electric supply they had promised/contracted to provide and take steps to cure the deficiency, even if Defendants' inability or unwillingness to provide the savings on electric supply they had promised/contracted to provide did not exhibit itself until after its customers had begun receiving services from Defendants.

32.     Despite such knowledge, Defendants did not disclose to prospective customers that: (a) Defendants were unable or unwilling to provide the savings on electric supply they had promised/contracted to provide and as such consumers would likely end up paying hundreds or even thousands of dollars extra per year above what they would have paid had they stayed with their prior electric utility/supplier; (b) Defendants' inability or unwillingness to provide the savings on electric supply they had promised/contracted to provide may not become apparent until months after their customers had been receiving services from Defendants; and (C) once Defendants' inability or unwillingness to provide the savings on electric supply they had promised/contracted to provide manifested itself, Defendants were not committing to remedy the situation or be held responsible for any excessive overcharges their customers would incur.

33.     Furthermore, Defendants knew the only way to avoid the harm or potential harm was to provide notice to Plaintiff and those similarly situated, prior to providing services to them, that, in fact, Defendants would not be able to provide, or would be unwilling to provide, the savings on electric supply they had promised/contracted to provide which would in turn obliterate any viable reason for any customer to receive services from Defendants.

## PLAINTIFF'S ALLEGATIONS

34.     Based upon information Ms. Silvis was provided/received from Defendants, Ms. Silvis converted her electric service to Ambit and began receiving service from Defendants on April 12, 2013.  Plaintiff would not have enrolled in Ambit's program but for Defendants' deceptive marketing and business practices.  Had Plaintiff known that the rates she would be charged by Defendants would be substantially higher than the rates she would have paid with her previous energy supplier, Penelec, she would not have agreed to receive Defendants' services.

35.     Because of Defendants' conduct, Ms. Silvis has incurred significant overcharges on her electrical service.  Ms. Silvis' April 15, 2014, bill shows that Defendants charged her $0.1369 per kilowatt hour (Kwh), which was almost twice the rate that Plaintiff's local energy provider, Penelec, would have charged her during the same time period at $0.0.0771 per kwh.  Additionally, Ms. Silvis' May 13, 2014, electric bill shows that Defendants again charged her $0.1369 per Kwh, which was again almost twice the rate that Plaintiff's local energy provider, Penelec, would have charged her during the same time period at $0.0.0771 per kwh.

36.     Plaintiff was unable to cancel her service without penalty as she was still responsible for the outrageous bills she incurred as a result of Defendants' deceptive and misleading statements which induced her to sign up with Defendants in the first place.

37.     Defendants have failed to meaningfully disclose how their rates are determined. Upon information and belief, Defendants' customers are not told the actual rates that they have been charged until they receive their bill and have utilized the energy for which they are being charged.

38.     Defendants' rates are not competitive with other suppliers or in line with market factors. Customers who switch to Ambit can pay as much as up to twice the going rate in their area. Defendants' customers regularly complain that their rates far exceed that of any other supplier, that their rates have doubled and that they are often being overcharged as compared to remaining with their local utilities.

39.     Defendants do not disclose these material facts to their customers but actively encourage the false perception that switching to and remaining with Defendants will mean savings to the cost-conscious consumer.

40.     Defendants' various representations regarding price are materially misleading to consumers and have the capacity to mislead.  Given knowledge of the relevant facts regarding Defendants' exorbitant rates when compared to their local energy supplier, no reasonable consumer would choose Defendants as an energy supplier.

41.     Defendants knew (or but for their reckless indifference would have known) prior to agreeing to supply electricity to Plaintiff that they would be unable or unwilling to provide the savings and/or competitive rate that they agreed/promised to provide.

42.     Defendants knew (or but for their reckless indifference would have known) prior to agreeing to supply electricity to Plaintiff that Defendants would require sufficient energy supplies to meet Plaintiff's needs that Defendants would be incapable, unable or unwilling to timely, skillfully, knowledgeably, reliably and/or honestly make the necessary and/or appropriate energy purchases to provide the savings and/or competitive price that they contracted/promised to provide.

43.     It is clear that Plaintiff and Defendants did not deal with each other on equal terms due to Defendants' perceived overmastering dominance related to Defendants' purported skill and experience in purchasing electric energy supplies timely, skillfully, knowledgably, reliably,

honestly and efficiently in the open market and Plaintiff depended on and trusted Defendants to do so. Defendants betrayed Plaintiff's trust.

44.     As a result of Defendants' inability or unwillingness to provide Plaintiff with the competitive rates and/or savings they contracted/promised to provide, Plaintiff incurred significant overcharges for her electricity.

45.     As a result of Defendants' inability or unwillingness to purchase electric energy supplies timely, skillfully, knowledgably, reliably, honestly and efficiently in the open market, as they contracted/promised to, Plaintiff incurred significant overcharges for her electricity.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.

**A.     Class Definition(s)**

47.     The (b)(2) Injunctive Relief Class consists of: All persons who contracted with Defendants to act as their electric supplier.

48.     Excluded from the Class(es) are: Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate families and the presiding judge(s) in this case and his, her or their immediate family.

**B.     Numerosity**

49.     At this time, Plaintiff does not know the exact size of the Class; however, due to the

nature of the trade and commerce involved, Plaintiff believes that the Class members are so

numerous that joinder of all members is impracticable.  The number and identities of Class

members is administratively feasible and can be determined through appropriate discovery.

     **C.**     **Commonality**

50.     There are questions of law or fact common to the class, including at least the

following:

     a.     Whether Defendants contracted to provide savings and/or a competitive rate

on their electric services;

     b.     Whether Defendants made representations that they would provide savings

and/or competitive electric rates to induce potential customers into securing their services;

     c.     Whether Defendants' inability or unwillingness to provide savings or

competitive electric rates as complained of herein caused the damages of Plaintiff and other

members of the Class;

     d.     Whether Defendants had actual or imputed knowledge of their inability or

unwillingness to provide savings or competitive electric rates as complained of herein and

failed to disclose it to Plaintiff and the Class;

     e.     Whether Defendants have a pattern and practice of attributing damages

claimed by Plaintiff and the Class to rising electric energy prices in the open market or other

causes not in their control, and not due to its inability or unwillingness to provide savings or

competitive electric rates as complained of herein;

     f.     Whether Defendants acted or refused to act on grounds generally applicable

to the Class;

     g.     Whether Defendants' conduct constitutes consumer fraud and/or common

law fraud;

      h.      Whether Defendants were unjustly enriched by their conduct; and

      i.      Whether Plaintiff and other members of the Class have been damaged, and if

so, what is the proper measure of such damages?

**D.**      **Typicality**

51.      Plaintiff has the same interests in this matter as all other members of the Class, and

her claims are typical of all members of the class.

**E.**      **Adequacy**

52.      Plaintiff is committed to pursuing this action and has retained competent counsel

experienced in the prosecution and successful resolution of consumer class actions.  Plaintiff will

fairly and adequately represent the interests of the Class members and does not have interests

adverse to the Class.

**F.**      **The Prerequisites of Rule 23(b)(2) are Satisfied**

53.      The prerequisites to maintaining a class action for injunctive and equitable relief

pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendants have acted or refused to act on grounds

generally applicable to the Class thereby making final injunctive and equitable relief appropriate

with respect to the Class as a whole.

54.      The prosecution of separate actions by members of the Class would create a risk of

establishing incompatible standards of conduct for Defendants.  For example, one court might

decide that the challenged actions are illegal and enjoin them, while another court might decide that

those same actions are not illegal.  Individual actions may, as a practical matter, be dispositive of

the interest of Class members, who would not be parties to those actions.

55.    Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.

56.    Defendants' systemic policies and practices make declaratory relief with respect to the class as a whole appropriate.

**G.    The Prerequisites of Rule 23(b)(3) are Satisfied**

57.    This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.  This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

## CAUSES OF ACTION

## COUNT I

### (BREACH OF CONTRACT)

58.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

59.    Defendants had valid contracts with Plaintiff and the Class Members.

60.    Plaintiff and the Class substantially performed their obligations under the contracts.

61.    As discussed herein, Defendants breached the contracts.

62.    Where the relevant agreements between Defendants and the Class do not specify the

applicable price, to prevent the contract from being too indefinite or from placing Plaintiffs and the

Class at Defendants' mercy, the agreements should be deemed to contain an implied contractual

term mandating a reasonable price.  In this case, a reasonable price would be the rate being charged

by the Plaintiff's and the Class' local electric utilities during the applicable class period.

63.     Defendants breached this implied contractual term by charging Plaintiff and the

Class members unreasonable and exorbitant prices.

## COUNT II

### (UNJUST ENRICHMENT- IN THE ALTERNATIVE)

64.     Plaintiff and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth herein.

65.     Should the Court determine that a valid, enforceable and binding contractual

relationship did not exist between the parties at any time or covering any aspect of their

relationship, Plaintiff brings this claim in the alternative for unjust enrichment.

66.     Because of Defendants' wrongful activities described above, including charging

Plaintiff and the Class exorbitant rates grossly out of line with market conditions; Defendants have

received money belonging to the Plaintiff and the Class.

67.     By collecting exorbitant and unreasonable rates from Plaintiff and the Class,

Defendants have benefited from receipt of the excessive rates, and under principles of equity and

good conscience, Defendants should not be permitted to keep this money.

68.     Defendants have reaped improperly obtained profits and unjustly enriched

themselves at the expense of Plaintiff and the Class.

69.     As a result of Defendants' imposition of these excessive and unreasonable energy rates, Defendants must account to Plaintiff and the Class for such unjust enrichment and disgorge their improperly obtained profits as restitution to Plaintiff and the Class.

70.     Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all reimbursement, restitution and disgorgement from Defendants.  Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

71.     By reason of the foregoing, Plaintiff and the Class have suffered money damages in an amount to be determined during the trial of this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

a)  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

b)  Designating Plaintiff as representative of the Class and his counsel as Class counsel;

c)  Entering judgment In favor of Plaintiff and the Class and against Defendants;

d)  Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

e)  Imposing a constructive trust on amounts wrongfully collected from Plaintiff and the Class members pending resolution of their claims herein;

f)  Award injunctive relief as appropriate and necessary to remedy Defendants' wrongful conduct and to prevent the wrongful conduct from continuing; and

g)  Granting such further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues.

Date: August 27, 2014

Respectfully Submitted,

**SEEGER WEISS LLP**

_____
Jonathan Shub, Esquire
Identification No: 53965
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300
Fax: (215) 851-8029

Troy M. Frederick, Esquire
Marcus & Mack, P.C.
Identification No: 207461
57 South Sixth Street
Indiana, PA 15701
Phone: (724) 349-5602
Fax: (724) 349-8362

*Attorneys for Plaintiff*

19