IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
AMY SILVIS,                        :     CIVIL ACTION
on behalf of herself and all       :     No. 14-5005
others similarly situated,         :
                                   :
          Plaintiff,               :
                                   :
     v.                            :
                                   :
AMBIT ENERGY, L.P. et al.,         :
                                   :
          Defendants.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        March 13, 2015


        Plaintiff Amy Silvis brings this class action against

her residential energy supplier, Defendant Ambit Energy, L.P.,

and a host of related entities, alleging breach of contract,

breach of the covenant of good faith and fair dealing, and

unjust enrichment. Defendants have moved to transfer venue. For

the reasons that follow, the Court will deny the motion.


**I.   BACKGROUND AND PROCEDURAL HISTORY**

        Plaintiff, a Pennsylvania resident, contracted with

Defendant Ambit Northeast, LLC,[1] a Delaware company with a

---

[1]        Along with Ambit Northeast, LLC, Plaintiff names Ambit
Energy, L.P., Ambit Texas, LLC, Ambit Energy, Ambit Energy
Holdings, LLC, Ambit Energy Holdings, and Ambit Holdings, LLC,
as Defendants. Plaintiff asserts that all Defendants "were
collectively engaged in the business of marketing, advertising

principal place of business in Dallas, Texas, to supply her electricity. According to Plaintiff, Defendants' marketing campaign promised savings over other energy suppliers and competitive variable rates "keyed to market factors." Am. Compl. ¶ 17. In reliance on these representations, Plaintiff opted for a variable rate plan, under which she would pay a "teaser" rate for an initial one-month term, and then pay a rate "dependent upon price fluctuations in the energy and capacity markets, plus all applicable taxes" thereafter. Residential Disclosure Statement, Id. Ex. C. Although there is some disagreement between the parties about which documents represent the agreement at issue here, both the Residential Disclosure Statement (the "Disclosure") and the Sales Agreement & Terms of Service (the "Terms of Service") became operative during the course of the parties' dealings. See Am. Compl. ¶¶ 27, 32. Included within the "Governing Law" section of the Terms of Service is the following language: "Venue for any lawsuit brought to enforce any term or condition contained herein shall be exclusively in the State of Texas." Terms of Service, id. Ex. B, at 3.

---

and selling electric utility services to consumers in Pennsylvania." Am. Compl. ¶ 10. The Court refers to these entities collectively as "Defendants" unless otherwise noted.

On February 17, 2013, at the beginning of the contract term, the "teaser" rate was $0.0699 per kilowatt hour (kWh). Id. Ex. C. Plaintiff alleges that, by April 15, 2014, the charge increased to $0.1369 per kWh, which was "almost twice the rate that Plaintiff's local energy provider, Penelec, would have charged . . . during the same time period." Am. Compl. ¶ 30. Plaintiff claims Defendants breached her contract, as well as those of all class members, by not providing the promised "competitive rate based on market factors." Id. ¶ 50.

On these allegations, Plaintiff brings the following claims[2]: breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and declaratory relief. Plaintiff requests that the Court certify the class, designate Plaintiff as class representative, award each class member individual damages, impose a constructive trust on Defendants pending resolution of these claims, and issue declaratory and injunctive relief.

## II.  PROCEDURAL HISTORY

On August 27, 2014, Plaintiff commenced this action by filing a Complaint in federal court. ECF No. 1. On November 11,

---

[2]      Subsequent to Defendants' initial motion to dismiss (ECF No. 9), which argued that Plaintiff improperly group-pleaded, Plaintiff amended the Complaint. The Amended Complaint contains 28 counts, repeating the same four counts for each of the seven named Defendants. Here, the Court notes only the four general counts.

2014, Defendants filed a Motion to Dismiss (ECF No. 9), and Plaintiff filed her Amended Complaint on November 24, 2014 (ECF No. 16). Defendants filed a Motion to Transfer Venue on January 21, 2015 (ECF No. 21), to which Plaintiff has responded (ECF No. 22). On January 27, 2015, Defendants filed a motion for leave to file a reply brief (ECF No. 24), which the Court will grant. Defendants' Motion to Transfer Venue is ripe for disposition.

### III. LEGAL STANDARD

A district court may transfer an action to any other district "where it might have been brought," so long as the transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Federal law governs the determination of whether to transfer venue pursuant to § 1404(a), as the issue is procedural rather than substantive. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).

Ordinarily, in a case not involving a forum-selection clause, a court evaluates a § 1404(a) motion using such factors as the convenience of the parties and the relevant public interests. Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Tex., 134 S. Ct. 568, 581 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to

the most proper forum.'" Id. (quoting Stewart Org., Inc. v.
Ricoh Corp., 487 U.S. 22, 31 (1988)). Because forum-selection
clauses are "bargained for by the parties," "a valid forum-
selection clause [should be] given controlling weight in all but
the most exceptional cases." Id. (alteration in original)
(quoting Stewart, 487 U.S. at 33) (internal quotation marks
omitted).

Accordingly, the Supreme Court's framework as set
forth in Atlantic Marine requires a two-part analysis. First, a
district court must determine whether the forum-selection clause
is valid and enforceable.[3] Forum-selection clauses are "prima
facie valid and should be enforced unless enforcement is shown
by the resisting party to be 'unreasonable' under the
circumstances," Foster v. Chesapeake Ins. Co., 933 F.2d 1207,
1219 (3d Cir. 1991) (quoting M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1, 10 (1972)) (internal quotation marks omitted)--a
showing, in other words, that the agreement is undermined by
"fraud, undue influence, or overweening bargaining power." Id.
(quoting Bremen, 407 U.S. at 12) (internal quotation marks
omitted). Second, a court must consider whether, pursuant to
§ 1404(a), "extraordinary circumstances" militate against

---

[3]      In Atlantic Marine, the Supreme Court presupposed a
valid forum-selection clause because validity was not disputed
by the parties in that case. 134 S. Ct. at 576, 581 n.5.

enforcing the forum-selection clause. <u>Atl. Marine</u>, 134 S. Ct. at 581.

In conducting the § 1404(a) analysis, a district court must bear in mind three directives from the <u>Atlantic Marine</u> Court: (1) "the plaintiff's choice of forum merits no weight"; (2) a court "should not consider arguments about the parties' private interests"; and (3) "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." <u>Id.</u> at 581-82. A district court may thus consider "arguments about public-interest factors only." <u>Id.</u> at 582. These factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id.</u> at 581 n.6 (alteration in original) (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 n.6 (1981)) (internal quotation marks omitted). Finally, "the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." <u>Id.</u> at 581.

## IV. DISCUSSION

Defendants argue that the Court should enforce the forum-selection clause contained in the Terms of Service, and

transfer the case to the United States District Court for the Northern District of Texas. Defs.' Br. 15. In deciding the motion to transfer, the Court therefore proceeds under the Atlantic Marine framework.

First, the Court considers the validity and enforceability of the forum-selection clause. Here, although Defendants argue that the clause is valid as part of the Terms of Service, Plaintiff disagrees. According to Plaintiff, the Disclosure is a fully integrated agreement in its own right and forms the exclusive basis of this lawsuit; the Terms of Service is, if anything, a separate, later-executed agreement. See Pl.'s Br. 4-5.[4] Plaintiff also argues that, even if the forum-selection clause is part of the agreement at issue, it is nonetheless both procedurally and substantively unconscionable as an adhesion contract that "effectively immunize[s] Defendants from the threat of litigation." Id. at 8; see also id. at 5-9.

Since Plaintiff has disputed the validity of the forum-selection clause--and, indeed, the very contract of which it forms a part--it would ordinarily fall to the Court to resolve this question in the course of deciding the motion to transfer. However, as the Court notes in its separate order

---

[4]     As the Court elicited from Plaintiff at oral argument, her position here contradicts the Amended Complaint, which alleges that Defendants breached the Terms of Service as well. See Am. Compl. ¶¶ 27, 32.

disposing of Defendants' Motion to Dismiss (ECF No. 19), the current record is insufficiently developed and, at this stage of the proceedings and in the light most favorable to Plaintiff, does not support the contention that the Terms of Service is part of the integrated contract. Because, as shown below, the Court can decide the motion to transfer by applying the § 1404(a) public-interest factors, it will proceed to that analysis and reserve the question of contract validity for a later stage in the proceedings.[5,6]

Second, the Court considers whether the § 1404(a) public-interest factors would support transfer, or whether this is one of those cases in which "extraordinary circumstances" preclude enforcement of the forum-selection clause. To begin, the Court finds the judicial economy factor to be a neutral one, since neither the Court nor the parties see any reason why

---

[5] The Court is especially justified in reserving the question of validity where, as here, its answer would not determine the outcome of the motion to transfer. If the Court found the forum-selection clause valid, it would nevertheless find the § 1404(a) public-interest factors controlling. On the other hand, if the Court found the forum-selection clause invalid, there would be no basis on which to transfer the case.

[6] Likewise, since the Court cannot now decide the validity of the forum-selection clause, it will not consider the related and equally disputed question of whether the clause is unconscionable.

efficiency concerns would favor either the Eastern District of Pennsylvania or the Northern District of Texas.[7]

Regarding the local-interest factor, Defendants argue summarily that "this putative class action is not a localized controversy and no local interest is served by having it decided in Pennsylvania." Defs.' Br. 13. In their reply, Defendants concede, as they must, that "Pennsylvania may have an interest in regulating its electricity market," but they argue that "Texas likewise has an interest in protecting its citizens, and several Defendants are Texas citizens." Defs.' Reply Br. 10. Plaintiff, for her part, stresses that "Pennsylvania has a unique interest in the regulation of its electricity market in addition to ensuring that its citizens are protected in that market." Pl.'s Br. 12.

The Court agrees with Plaintiff that this case represents a unique situation where the Commonwealth's interests compel that this litigation be conducted in a Pennsylvania forum. It is true that courts considering the local-interest factor have refused to find an extraordinary circumstance where the local interest merely favors one forum over another,

---

[7]      Plaintiff does argue that holding trial in the current forum would be more efficient. Pl.'s Br. 12. However, the reasons she provides--e.g., convenience for the parties and their witnesses--are all private-interest factors which the Supreme Court has banished from consideration. See Atl. Marine, 134 S. Ct. at 582.

especially when that factor is balanced against others. See,
e.g., Creative Commc'ns, LLC v. Iberiabank, No. 14-36, 2014 WL
2111208, at *3-4 (N.D. W. Va. May 7, 2014) (upholding forum-
selection clause and transferring case where, "[a]t best, West
Virginia's interest and Florida's interest in the outcome of
this action are approximately equal").[8] However, courts have
given preference to fora that have deeper ties to the
allegations--particularly when those fora have historically and
actively regulated the conduct or parties at issue. See, e.g.,
Barilotti v. Island Hotel Co., No. 13-23672, 2014 WL 1803374, at
*10 (S.D. Fla. May 6, 2014) ("The otherwise substantial weight
accorded to the United States' interests in providing a forum
for its Plaintiffs . . . is . . . outweighed by the Bahamian

---

[8]        See also, e.g., In re Lloyd's Register N. Am., Inc.,
No. 14-20554, 2015 WL 791405, at *8 (5th Cir. Feb. 24, 2015)
(refusing to find extraordinary circumstances where the local-
interest factor, as argued, indicated merely that "Texas is the
proper forum because the court needs to establish uniform rules
of conduct applicable to corporate entities in Texas" (internal
quotation marks omitted)); LaBar v. ABC Med. Holdings, Inc., No.
13-2551, 2014 WL 1714468, at *9-10 (N.D. Tex. Apr. 30, 2014)
(upholding forum-selection clause and transferring case after
finding that the facts merely "tip[ped] the 'local interest'
public factor in favor of [the transferor] forum"); Harland
Clarke Holdings Corp. v. Milken, 997 F. Supp. 2d 561, 588, 590
(W.D. Tex. 2014) (holding similarly after finding the local-
interest factor to be neutral where the relevant events took
place outside the transferor forum, the plaintiffs were citizens
of transferee forum, and the parties designated the transferee
forum's law).

interests in settling a dispute arising out of conduct that occurred in its own territory and related to a vital Bahamian industry, and regulating the standards of conduct of the Bahamian Defendant.").[9]

Here, Pennsylvania has historically regulated the supply of energy to its residents, and continues to do so actively in important ways even after partially deregulating the industry in 1996. See Am. Compl. ¶ 14. For example, the Pennsylvania Public Utility Commission ("PUC") mandates licensure for private energy suppliers, like Defendants, who wish to service the Commonwealth's market, and continues to regulate "distribution prices and services" provided by these suppliers. Disclosure, id. Ex. C. In addition, although the Commonwealth partially deregulated its energy industry, Pennsylvania consumers still have the option of purchasing energy from public utilities which compete with private suppliers like Defendants. Am. Compl. ¶ 14. Moreover, the contracts at issue were formed in Pennsylvania, the alleged

---

[9]     See also, e.g., Horberg v. Kerzner Int'l Hotels Ltd., 744 F. Supp. 2d 1284, 1295-96 (S.D. Fla. 2007) ("The Bahamas has a much stronger local interest in deciding this action. Defendants are Bahamian entities, and the alleged accident occurred off the waters of The Bahamas. The case involves a prominent Bahamian resort, and tourism is the largest industry in The Bahamas. The Bahamas has a vital interest in regulating the standards of conduct of the Bahamian Defendants.").

breach occurred in Pennsylvania, and the proposed class is limited to current or former Pennsylvania residents. See id. ¶ 26. For these reasons, the Commonwealth (and, by extension, the Eastern District of Pennsylvania) has a decisive interest in this case--certainly a much stronger interest than fora in other states, including the Northern District of Texas.

The final public-interest factor is "the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine, 134 S. Ct. at 581 n.6 (quoting Piper Aircraft, 454 U.S. at 241 n.6). Here, the contract was formed in Pennsylvania and the parties agree that Pennsylvania law applies.[10,11] Based on practice and experience, this Court is in a better position to apply Pennsylvania law than courts in the Northern District of Texas. Admittedly, this factor is not decisive, see id. at 584 ("[I]n any event, federal judges routinely apply the law of a State other than the State in which they sit."), but it does provide additional support for retaining the case in this district.

---

[10]     Plaintiff explicitly states this. Pl.'s Br. 13. Defendants do so implicitly, arguing from Pennsylvania law in their motion to dismiss. See, e.g., Defs.' Mem. Supp. Mot. Dismiss 12, ECF No. 20.

[11]     Although the Supreme Court in Atlantic Marine forbade consideration of the "original venue's choice-of-law rules," 134 S. Ct. at 582, the Court does not consider them here, where the substantive law that applies is clearly Pennsylvania's.

In summary, the local-interest factor, along with the forum-law factor, strongly favor overriding the parties' forum-selection clause. The Court acknowledges that this should be done only in "the most unusual cases." Id. at 583. However, because this case implicates Pennsylvania's historical and ongoing regulation of the commodity at issue--one with substantial impact on Pennsylvania's citizens and economy--it is truly exceptional within the meaning of Atlantic Marine. Therefore, the Court finds that Plaintiff has met her burden of establishing that transfer of the case from the Eastern District of Pennsylvania to the Northern District of Texas is unwarranted, and will decline to enforce the forum-selection clause. See Atl. Marine, 134 S. Ct. at 581.

## V.   CONCLUSION

In light of the above, the Court will deny Defendants' Motion to Transfer Venue. An appropriate order follows.

13