# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMY SILVIS, on behalf of herself and all
others similarly situated,

                      Plaintiff

    v.

AMBIT NORTHEAST, LLC, i/t/d/b/a
AMBIT ENERGY,
                  Defendant.

Civil Action No.
2:14-cv-05005-ER

Jury Trial Demanded

Oral Argument Requested

---

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ..............................................................................1

II.    FACTUAL BACKGROUND.............................................................3

III.    LEGAL STANDARD ......................................................................5

IV.    ARGUMENT AND AUTHORITIES ..............................................6

    A.    The Terms of Service and the Residential Disclosure Statement are one integrated contract. ..............................................................6

    B.    The Court should grant Ambit Northeast's motion for summary judgment on Plaintiff's unjust enrichment claim because Plaintiff admittedly entered into a valid, express contract with Ambit Northeast. ...............................................................................10

    C.    The Court should grant Ambit Northeast's motion for summary judgment on Plaintiff's breach-of-contract claim because the Terms of Service preclude such a claim. ............................................12

        1.    Plaintiff does not allege—and cannot establish—that Ambit Northeast breached a term in the parties' agreement. ................................................................................13

        2.    A binding merger clause negates Plaintiff's attempt to insert a new "term" into the agreement. ...................................14

    D.    The Court should grant Ambit Northeast's motion for summary judgment on Plaintiff's claims for declaratory and injunctive relief as a matter of law because Plaintiff lacks standing to seek such relief. .......................................................................................17

V.    CONCLUSION..............................................................................19

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

## CASES

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986) ...........................................................................................6

<u>City of Los Angeles v. Lyons</u>,
461 U.S. 95 (1983) ...........................................................................................17

<u>Feldman v. Google, Inc.</u>,
513 F. Supp. 2d 229 (E.D. Pa. 2007)...................................................................8

<u>Gianni v. Russell & Co.</u>,
126 A. 791 (Pa. 1924).........................................................................................7

<u>Glick v. White Motor Co.</u>,
458 F.2d 1287 (3d Cir. 1972) ..............................................................................9

<u>Grudkowski v. Foremost Ins. Co.</u>,
556 F. App'x 165 (3d Cir. 2014).......................................................................10

<u>Grudkowski v. Foremost Ins. Co.</u>,
No. 3:cv-12-1847, 2013 WL 816666 (M.D. Pa. Mar. 5, 2013) .........................11

<u>Haywood v. Univ. of Pittsburgh</u>,
976 F. Supp. 2d 606 (W.D. Pa. 2013) ..................................................................6

<u>Heffernan v. City of Paterson</u>,
777 F.3d 147 (3d Cir. 2015) ................................................................................5

<u>Leaman v. Wolfe</u>,
--- F. Supp. 2d ---, 2014 WL 3375010 (E.D. Pa. July 10, 2014) .......................12

<u>McGuire v. Schneider, Inc.</u>,
534 A.2d 115 (Pa. Super. Ct. 1987) ...................................................................15

<u>McNair v. Synapse Grp., Inc.</u>,
672 F.3d 213 (3d Cir. 2012) ................................................................... 17, 18, 19

Mellon Bank Corp. v. First Union Real Estate,
  951 F.2d 1399 (3d Cir. 1991) ...........................................................................6, 7

Pa. Reinsurance Corp. v. Employer's Ins. of Wausau,
  61 F. App'x 816 (3d Cir. 2003) .............................................................................9

Quorum Health Res., Inc. v. Carbon-Schuylkill Cmty. Hosp., Inc.,
  49 F. Supp. 2d 430 (E.D. Pa. 1999) ............................................................. 15, 16

Rearick v. Penn. State Univ.,
  416 F. App'x 223 (3d Cir. 2011) ........................................................................15

Siler v. Cmty. Educ. Ctrs., Inc.,
  CIV.A. No. 14-5019, 2014 WL 4931291 (E.D. Pa. Oct. 2, 2014) ......................11

Ware v. Rodale Press, Inc.,
  322 F.3d 218 (3d Cir. 2003) ...............................................................................12

Wilson Area Sch. Dist. v. Skepton,
  895 A.2d 1250 (Pa. 2006) ............................................................................ 11, 12

Winslow v. Stevens,
  No. 14-04550, 2015 WL 289998 (E.D. Pa. Jan. 21, 2015) .................................18

Yocca v. Pittsburgh Steelers Sports, Inc.,
  854 A.2d 425 (Pa. 2004) .....................................................................................15

ZF Meritor, LLC v. Eaton Corp.,
  696 F.3d 254 (3d Cir. 2012) ...............................................................................18

## RULES AND REGULATIONS

FED. R. CIV. P. 56 ...........................................................................................5

## I.   INTRODUCTION

Plaintiff Amy Silvis ("Plaintiff") sued Defendant Ambit Northeast, LLC ("Ambit Northeast") and various related entities for breach of contract and unjust enrichment, among other claims.  Plaintiff also sought declaratory and injunctive relief.

Ambit Northeast moved to dismiss Plaintiff's unjust enrichment claim on the basis that Plaintiff pleaded the existence of a valid, express contract, which precluded her unjust enrichment claim.  See Br. in Supp. of Mot. to Dismiss at 22–24 (Dkt. #20).  Ambit Northeast also moved to dismiss Plaintiff's breach-of-contract claim because the governing contract expressly gave Ambit Northeast the discretion to set prices.  See id. at 10–14.

In response, and in an attempt to avoid Ambit Northeast's motion to dismiss, Plaintiff claimed, for the first time in her opposition to the motion to dismiss, that the Ambit Pennsylvania Penelec Service Area Residential Disclosure Statement (the "Disclosure Statement") was a separate contract from the Ambit Pennsylvania Service Area Sales Agreement and Terms of Service (the "Terms of Service") and that the Disclosure Statement did not provide Ambit Northeast with discretion to set prices.  See Pl.'s Opposition to Mot. to Dismiss at 8–12 (Dkt. #23).  Plaintiff's argument contradicted her Amended Complaint, in which Plaintiff indisputably pleaded that that "Defendants' imposition of unreasonable and exorbitant rates

[was] in violation/breach of the *Defendants' Residential Disclosure Statement*, Energy Facts Label, *Sales Agreement and Terms of Service* and representations." Am. Compl. ¶ 27 (Dkt. #16) (emphasis added).[1]

The Court recognized that, if Plaintiff entered into the Terms of Service and the Disclosure Statement at the same time, they would constitute one, integrated agreement, see Tr. of Hearing on Mar. 6, 2015 at 6:4–7:19, 33:10–15, attached as Exhibit B; however, this issue was outside of the scope of the pleadings and was therefore not resolved at the motion-to-dismiss stage.

On March 13, 2015, the Court dismissed all of Plaintiff's claims except for her breach-of-contract and unjust enrichment claims and her request for declaratory and injunctive relief against Ambit Northeast. The Court reasoned that "[t]he parties here do not agree on which documents form the contract that Plaintiff is suing on," and "the current record is insufficient for [the Court] to answer this question." Order at 5 n.6 (Dkt. #32).

This motion for summary judgment conclusively resolves the Court's question regarding what constitutes the integrated agreement; therefore, Ambit Northeast now seeks summary judgment on Plaintiff's remaining claims. Plaintiff's claims fail because Ambit Northeast can establish as a matter of law that

---

[1] Although the Terms of Service refer to an Energy Facts Label, that document does not apply to the type of electricity plan in which Silvis enrolled. See Declaration of Brenda Kerrick ("Kerrick Decl.") ¶ 4, attached as Exhibit A.

the Terms of Service and Disclosure Statement are one, integrated contract.  Thus, as discussed below, the Court should grant summary judgment on Plaintiff's unjust enrichment and breach-of-contract claims.

Plaintiff cannot succeed on an unjust enrichment claim because Plaintiff pleads, and Ambit Northeast can establish, as a matter of law, that Plaintiff entered into a valid, express contract with Ambit Northeast consisting of the Terms of Service and the Residential Disclosure Statement.  Plaintiff's breach-of-contract claim fails because Plaintiff cannot establish that Ambit Northeast breached a term of the contract.  In fact, the Terms of Service give Ambit Northeast discretion to set prices, and the contract contains a merger clause barring the introduction of a contrary term.  Finally, Plaintiff is no longer an Ambit Northeast customer. Accordingly, the Court should grant Ambit Northeast's motion for summary judgment and enter judgment as a matter of law on her claims for declaratory and injunctive relief, because Plaintiff cannot establish a reasonable probability of future harm.  Therefore, Plaintiff's claims fail as a matter of law, and the Court should grant Ambit Northeast's motion for summary judgment.

## II.    FACTUAL BACKGROUND

Plaintiff switched from her prior electric service provider to Ambit Northeast on February 17, 2013.  See Am. Compl. ¶ 29; Kerrick Decl. ¶ 13 & Ex. 6.  Plaintiff enrolled with Ambit Northeast through an Ambit Northeast consultant

on Ambit Northeast's website.  <u>See</u> <u>id.</u>  When she enrolled, Plaintiff had to enter certain personal information, including her name, address, email address, and her account number with her incumbent electricity provider.  <u>See</u> <u>id.</u> ¶ 10.  After entering this personal information, Plaintiff would have been provided a copy of the Terms of Service and the Disclosure Statement to review, and she would have had to click that she agreed to the Terms of Service before she would have been permitted to enroll as an Ambit Northeast customer.  <u>See</u> <u>id.</u>

Approximately one year after Plaintiff enrolled, in March 2014, Plaintiff set up a "My Ambit" account online.  <u>See</u> <u>id.</u> ¶ 14 & Ex. 6.  The Terms of Service and the Disclosure Statement are prominently displayed on Plaintiff's "My Ambit" account as "Important Documents."  <u>See</u> <u>id.</u>  Ambit Northeast also sent a copy of the Terms of Service to Plaintiff,  at her attorney's request, in June 2014.  <u>See</u> <u>id.</u> ¶¶ 6–9 & Exs. 3–5.

Plaintiff cancelled her electric service with Ambit Northeast on October 14, 2014.  <u>See</u> <u>id.</u> ¶ 15 & Ex. 6.  Plaintiff subsequently cancelled her gas service with Ambit Northeast on February 25, 2014.  <u>See</u> <u>id.</u>  Thus, Plaintiff is no longer an Ambit Northeast customer.

In her lawsuit, Plaintiff claims that Ambit Northeast "entered into valid and enforceable agreements . . . with Plaintiff," and Ambit Northeast "breached its agreements . . . by charging rates that did not meet the contractual obligation to

provide a competitive rate based on market factors."  <u>See</u> Am. Compl. ¶¶ 104–05.

The "valid and enforceable agreements" to which Plaintiff refers are—according to

Plaintiff—the "Residential Disclosure Statement, Energy Facts Label, Sales

Agreement and Terms of Service . . . ."  <u>Id.</u> ¶ 27.  Plaintiff's counsel admitted, at

the hearing on Defendants' motion to dismiss, that these agreements constitute

"one agreement."  Tr. of Hearing on Mar. 6, 2015 at 90:15–16, attached as Exhibit

B.  Plaintiff also raises unjust enrichment claims and requests declaratory and

injunctive relief seeking "a declaration of [Ambit Northeast's] obligations to

[Plaintiff] under the agreements regarding the pricing of its electricity."  Am.

Compl. ¶¶ 114–18, 120–22.

For the reasons set forth below, the Court should grant Ambit Northeast's

motion for summary judgment and enter judgment as a matter of law on all of

Plaintiff's claims.

### III.   LEGAL STANDARD

The Court should grant the movant's motion for summary judgment if there

are no genuine issues of material fact and the movant is entitled to judgment as a

matter of law. <u>See</u> FED. R. CIV. P. 56; <u>Heffernan v. City of Paterson</u>, 777 F.3d 147,

151 (3d Cir. 2015). Summary judgment is [also] appropriate where the "the

nonmoving party has failed to make a sufficient showing on an essential element of

his or her case with respect to which [he or] she has the burden of proof." <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

## IV.   ARGUMENT AND AUTHORITIES

**A.    The Terms of Service and the Residential Disclosure Statement are one integrated contract.**

The Terms of Service give Ambit Northeast the "discretion" to set prices.

<u>See</u> Kerrick Decl. ¶ 3 & Ex. 1. Recognizing that her breach-of-contract claim fails

if the agreements are integrated, and in an attempt to avoid this contractual term,

Plaintiff's response to Ambit Northeast's motion to dismiss argues that the

Residential Disclosure Statement is a fully integrated agreement, separate and apart

from the Terms of Service.  This is incorrect.

Under Pennsylvania law, a contract is "integrated" if it represents a final and

complete expression of the parties' agreement.   <u>See Mellon Bank Corp. v. First</u>

<u>Union Real Estate</u>, 951 F.2d 1399, 1405 (3d Cir. 1991); <u>Haywood v. Univ. of</u>

<u>Pittsburgh</u>, 976 F. Supp. 2d 606, 636 (W.D. Pa. 2013) (applying Pennsylvania

law).  To determine whether a contract is integrated, a court must consider whether

the contract appears to be "complete within itself, couched in such terms as import

a complete legal obligation without any uncertainty as to the object or extent of the

[parties'] engagement."  <u>Haywood</u>, 976 F. Supp. 2d at 636.  In that situation, it is

"conclusively presumed that [the writing represents] the whole engagement of the

parties."  <u>Id.</u>  For example, in <u>Mellon Bank Corp.</u>, the Third Circuit held that if two

agreements "relate to the same subject matter, and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing."  951 F.2d at 1405 (quoting Gianni v. Russell & Co., 126 A. 791 (Pa. 1924)).

Here, the Terms of Service expressly incorporate the Residential Disclosure Statement by reference, and both documents cover the same subject matter—the provision of electric services to consumers in Pennsylvania.  See Kerrick Decl. ¶¶ 3, 5 & Exs. 1–2.  Moreover, Plaintiff entered into the Terms of Service when she enrolled through a website, and the Disclosure Statement was provided at the same time.  See id. ¶ 6.  Indeed, after Plaintiff keyed her personal information into the website, Plaintiff was provided a copy of the Terms of Service and the Disclosure Statement to review, and she had to click on a box on the website acknowledging that she had read, printed, and agreed to the Terms of Service.  See id.  Thus, as established by Mellon Bank Corp., the Terms of Service, taken together with the Residential Disclosure Statement—which is incorporated by reference and covers the same subject matter—constitute the fully integrated agreement and must be considered together.  Plaintiff's argument that the Residential Disclosure Statement, standing alone, is fully integrated is contrary to established law.

The fact that the Terms of Service were presented, and assented to, electronically does not affect their enforceability—"clickwrap" agreements on websites are enforceable.  See Feldman v. Google, Inc., 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007).   In Feldman, the court noted that a "'clickwrap' agreement appears on an internet webpage and requires that a user assent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction."   Id.   The court recognized that traditional principles of contract law apply to such agreements, and they are enforceable even if a user fails to read the agreement, absent a showing of fraud.  Id.

Here, Ambit Northeast provides customers with the Terms of Service and the Disclosure Statement before they enroll.  See Kerrick Decl. ¶ 10.  Then,  during the enrollment process, a dialog box specifically requires the user to acknowledge that she has "read, printed, downloaded, and accepted Ambit Energy's Terms of Service."  Id. Therefore, Plaintiff cannot claim that she was not aware of both the Terms of Service and the Disclosure Statement when she enrolled with Ambit Northeast.  Rather, she expressly acknowledged that she was aware of them, and that she agreed to be bound by them.

Further, Plaintiff's attempt to avoid the Terms of Service is improper because Plaintiff's counsel admitted, in open court, that the Terms of Service and the Residential Disclosure Statement are "one agreement":

The Court: Okay. My question is perhaps too simple. Are you suing, and [the Amended Complaint paragraph 27] says here, "The defendants violated or breach the residential disclosure statement," and commas seem to play an important role here, "energy fact label, sales agreement and terms of service." Is that one agreement that you are suing on?

Mr. George: The material price - -

The Court: And then [paragraph] 32 said "Defendants failed to abide by their own residential disclosure statement, energy facts label, sales agreement and terms of service."

Mr. George: Yea, Your Honor. And that's what we alleged - -

***The Court: That is one agreement?***

***Mr. George: Yes, Your Honor.***

The Court: Okay. It is what it is.

Mr. George: Yes.

Tr. of Hearing on Mar. 6, 2015 at 90:2–18, attached as Exhibit B (emphasis added). This is a binding judicial admission. See Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972) ("It has been held that judicial admissions are binding for the purposes of the case in which the admissions are made . . . and that an admission of counsel during the course of trial is binding on his client."); Pa. Reinsurance Corp. v. Employer's Ins. of Wausau, 61 F. App'x 816, 819 (3d Cir. 2003) (holding that a party's statement that "the parties had an 'informal agreement to arbitrate the parties' rights under all of the . . . agreements simultaneously' is a judicial admission" and, therefore, the party's opponent was

not required to produce evidence of a consolidation agreement).  The Court should not permit Plaintiff to argue to the contrary.

Further, Plaintiff's Amended Complaint quotes from, repeatedly cites to, and attaches both the Terms of Service and the Residential Disclosure Statement.  See Pl.'s Am. Compl. ¶¶ 12, 27, 32 & Exs. B & C.  Indeed, Plaintiff's Amended Complaint contradicts her argument, because she specifically pleads that "Defendants' imposition of unreasonable and exorbitant rates [is] in violation/breach of the Defendants' Residential Disclosure Statement, Energy Facts Label, Sales Agreement and Terms of Service and representations."  Id. ¶ 27.

For these reasons, the Court should find, as a matter of law, that the Terms of Service and the Disclosure Statement are one, integrated contract comprising the parties' agreement.

**B.  The Court should grant Ambit Northeast's motion for summary judgment on Plaintiff's unjust enrichment claim because Plaintiff admittedly entered into a valid, express contract with Ambit Northeast.**

Under Pennsylvania law, a party cannot bring an unjust enrichment claim if there is a valid, express contract.  See Grudkowski v. Foremost Ins. Co., 556 F. App'x 165, 169–70 (3d Cir. 2014) ("Under Pennsylvania law, 'the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings.'"

(quoting <u>Wilson Area Sch. Dist. v. Skepton</u>, 895 A.2d 1250, 1254 (Pa. 2006));

<u>Siler v. Cmty. Educ. Ctrs., Inc.</u>, CIV.A. No. 14-5019, 2014 WL 4931291, at *6

(E.D. Pa. Oct. 2, 2014) (Robreno, J.).

 For example, in <u>Grudkowski</u> the plaintiff pleaded the existence of an express

contract, and the district court dismissed the unjust enrichment claim for this

reason.  <u>Grudkowski v. Foremost Ins. Co.</u>, No. 3:cv-12-1847, 2013 WL 816666, at

*12–13 (M.D. Pa. Mar. 5, 2013).  The Third Circuit affirmed and held that

"[b]ecause the relationship between [the plaintiff] and [the defendant] was

governed by valid insurance contracts, unjust enrichment cannot provide [the

plaintiff] a basis for relief."  <u>Id.</u> at 170.

 Here, as described above, Plaintiff was specifically required to agree to the

Terms of Service, which expressly incorporate the Disclosure Statement, before

she enrolled with Ambit Northeast.  <u>See</u> Kerrick Decl. ¶¶ 3, 5 & Exs. 1–2.  These

agreements specifically cover the same subject-matter as Plaintiff's claims (i.e.,

pricing of electricity).  <u>See</u> <u>id.</u>

 Further, Plaintiff expressly pleads that Ambit Northeast "entered into valid

and enforceable agreements with Plaintiff and the Proposed Class Members which

included specific terms relating to the rate to be charged for the electricity

sold . . . ."  Am. Compl. ¶¶ 49, 78, 104, 124, 144, 167, 192.  Indeed, she attached

both the Terms of Service and the Disclosure Statement to her Amended

Complaint.  See id. at Exs. B, C.  Additionally, she does not challenge the validity of the contract(s).

This unequivocal pleading of a valid contract, and the evidence that Plaintiff entered into such a contract, precludes Plaintiff's unjust enrichment claim under Pennsylvania law.  See Grudkowski, 556 F. App'x at 169–70 & n.8; Skepton, 895 A.2d at 1254.  Thus, the Court should grant Ambit Northeast's motion for summary judgment and enter judgment as a matter of law on Plaintiff's unjust enrichment claim.

## C.   The Court should grant Ambit Northeast's motion for summary judgment on Plaintiff's breach-of-contract claim because the Terms of Service preclude such a claim.

Plaintiff's breach-of-contract claim fails as a matter of law because her claims rely on a purported term outside of the written contract between the parties. To establish a breach-of-contract claim under Pennsylvania law, a plaintiff must prove: "(1) the existence of a contract, including its essential terms, (2) a *breach of a duty imposed by the contract*[,] and (3) resultant damages."  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (emphasis added); Leaman v. Wolfe, --- F. Supp. 2d ---, 2014 WL 3375010, at *6 (E.D. Pa. July 10, 2014).  Plaintiff cannot establish the second and third elements.

**1.      Plaintiff does not allege—and cannot establish—that Ambit Northeast breached a term in the parties' agreement.**

Plaintiff cannot establish a "breach" of the parties' contract, because the "term" allegedly breached is not contained within the Terms of Service or the Residential Disclosure Statement.   Plaintiff claims that the contract offers "an initial competitive 'teaser' rate that is then replaced by a variable rate which Defendant promises will continue to be competitively keyed to market factors." Am. Compl. ¶ 17.   Then, in her breach-of-contract cause of action, Plaintiff alleges that "Defendant breached its agreements with Plaintiff and the Proposed Class Members by charging rates that *did not meet the contractual obligation to provide a competitive rate based on market factors*."   Id. ¶ 105 (emphasis added).

The written agreement, however, does not obligate Ambit Northeast to "provide a competitive rate based on market factors."   Instead, the Terms of Service permit Ambit Northeast to set the rates *in its discretion* for variable-rate plans:

> **Pricing and Payment**: Unless otherwise agreed to in writing or other form as authorized by the Public Utility Commission of Pennsylvania your rate will be disclosed to you in your Disclosure Statement at the time of enrollment. Customers who choose a term product have a fixed rate for the entire term and may be charged a fee for early termination, if specified in the Disclosure Statement.  If you selected a variable rate plan, your initial rate will be shown at the time of your enrollment and *thereafter rates are subject to change at the **discretion of Ambit Energy***. Each billing period, you will receive a single invoice from your EDC or NGDC that includes Ambit Energy supply charges, as well as applicable EDC or NGDC charges, surcharges,

state and local taxes.

Am. Compl. Ex. B at 2 (Terms of Service) (emphasis added); <u>see also</u> Kerrick Decl. ¶ 3 & Ex. 1.  The Disclosure Statement—which is expressly incorporated by reference into the Terms of Service—states that the customer's rate "may vary dependent upon price fluctuations in the energy and capacity markets, plus all applicable taxes."  Am. Compl. at Ex. C (Disclosure Statement); <u>see also</u> Kerrick Decl. ¶ 3 & Ex. 1.  Said another way, the binding contract gives Ambit Northeast full discretion to change variable rates, and it outlines that the prices will fluctuate. Thus, the contract does <u>not</u> bind Ambit Northeast to "provide a competitive rate based on market conditions."  Because the express contractual terms contradict the allegations in Plaintiff's breach-of-contract claim, the Court should grant summary judgment to Ambit Northeast on that claim.

**2.     A binding merger clause negates Plaintiff's attempt to insert a new "term" into the agreement.**

Additionally, the presence of a merger clause prevents Plaintiff from trying to alter or contradict the terms of the parties' written contract.  The Terms of Service contain an express merger clause:

> **Entire Agreement:** This Agreement sets forth the *entire agreement between the parties* with respect to the terms and conditions of this transaction; any and all other agreements, understandings and representations by and between the parties with respect to the matters addressed herein are superseded by this Agreement.

Am. Compl. Ex. B at 3 (Terms of Service) (second emphasis added); <u>see also</u>

Kerrick Decl. ¶ 3 & Ex. 1.

Pennsylvania law bans parol evidence if the parties to an agreement intend a writing to be a "complete expression of their agreement."  In such an event, evidence of prior oral or written statements or negotiations cannot be admitted to vary the agreement's language.  See, e.g., Quorum Health Res., Inc. v. Carbon-Schuylkill Cmty. Hosp., Inc., 49 F. Supp. 2d 430, 432–33 (E.D. Pa. 1999); Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004); McGuire v. Schneider, Inc., 534 A.2d 115, 117–18 (Pa. Super. Ct. 1987).

Whether an agreement is fully integrated is a question of law.  See McGuire, 534 A.2d at 118.  Here, the agreement expressly provides that "it contains the parties' 'entire understanding and agreement[,]' its terms are not ambiguous," and it covers the subject-matter in dispute.  Id.  Thus, extrinsic evidence is inadmissible to vary the agreement's terms.  Id.

A plaintiff cannot rely on an alleged representation or term that is not contained within the parties' fully-integrated contract covering the same subject matter to establish a breach of the contract.  See, e.g., Rearick v. Penn. State Univ., 416 F. App'x 223, 225 (3d Cir. 2011); Quorum Health Res., 49 F. Supp. 2d at 433.  For  example, in Rearick, the plaintiff claimed that her employer breached an employment contract by using the plaintiff's past performance assessments in determining whether to promote her.  416 F. App'x at 224.  The contract did not

prohibit use of past performance assessments in deciding promotion.  Id.  When affirming the district court's dismissal of the breach-of-contract claim, the Third Circuit concluded that the agreement at issue was fully integrated and failed to mention the use of the plaintiff's past performance evaluations.  Id. at 225. Accordingly, the court declined to read a term into the contract that it did not contain.  Id.

Similarly, in Quorum, the court dismissed a breach-of-warranty counterclaim that would have required consideration of pre-contractual representations.  49 F. Supp. 2d at 433.  The agreement was completely integrated, and the party alleging breach did "not dispute that its . . . breach of warranty counterclaim[ is] based on pre-contractual representations . . . ."  Id.

Likewise, here, Plaintiff's breach-of-contract claim is not based on terms contained in the Terms of Service or the documents incorporated therein.  The Terms of Service are indisputably fully integrated.  See Am. Compl. Ex. B at 3 (Terms of Service) (The Agreement "sets forth the *entire agreement* between the parties with respect to the terms and conditions of this transaction . . . ." (emphasis added)); see also Kerrick Decl. ¶ 3 & Ex. 1.  Therefore, Plaintiff cannot rely on representations outside of the parties' written agreement to *contradict* the express term of the Agreement allowing Ambit Northeast to set the variable rates "*in its discretion.*"  Am. Compl. Ex. B at 2 (Terms of Service) (emphasis added).

Because Plaintiff's breach-of-contract claim attempts to contradict the express language of the parties' agreement, the Court should enter judgment on it as a matter of law.

**D.    The Court should grant Ambit Northeast's motion for summary judgment on Plaintiff's claims for declaratory and injunctive relief as a matter of law because Plaintiff lacks standing to seek such relief.**

Plaintiff cancelled her electric account with Ambit Northeast on October 14, 2014—six months ago.  *See* Kerrick Decl. ¶ 15.  Because Plaintiff is no longer an Ambit Northeast customer, she cannot show a reasonable likelihood of future harm.  Therefore, Plaintiff no longer has a cognizable interest in the prospective relief she seeks and cannot bring claims for declaratory and injunctive relief.  Therefore, the Court should grant Ambit Northeast's motion for summary judgment on these claims.

To have Article III standing, Plaintiff must establish three elements: "(1) [an] injury-in-fact . . . that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) [a likelihood] . . . that the injury will be redressed by a favorable decision."  McNair v. Synapse Grp., Inc., 672 F.3d 213, 223 (3d Cir. 2012) (citation and internal quotation marks omitted).  If the plaintiff seeks prospective relief, the plaintiff must establish that she is "'likely to suffer from future injury' from the defendant's conduct."  Id. (quoting City of Los

Angeles v. Lyons, 461 U.S. 95, 103 (1983)).  Claims for declaratory and injunctive relief are both prospective.  See ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 302 (3d Cir. 2012) (requiring a showing of possible future injury to satisfy the standing requirement with respect to injunctive relief); Winslow v. Stevens, No. 14-04550, 2015 WL 289998, at *7 (E.D. Pa. Jan. 21, 2015) ("[T]o satisfy the standing and case or controversy requirements of Article III, a party seeking a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." (citation and internal quotation marks omitted)).

In McNair, the Third Circuit dismissed the plaintiffs' claims for injunctive relief because the plaintiffs failed to establish Article III standing.  Id.  The plaintiffs, who had been—but no longer were—customers of the defendant, claimed that they were deceived by a postcard that the defendant mailed.  Id. at 219.  The plaintiffs sought damages and injunctive relief.  Id. at 220.  The Third Circuit held that the plaintiffs lacked standing to pursue injunctive relief, because they were no longer customers of the defendant and therefore could not show a reasonable likelihood of future injury.  Id. at 225–26.

Likewise, here, Plaintiff cannot establish a likelihood of a future injury, because she is no longer an Ambit Northeast customer.  See Kerrick Decl. ¶ 15.  Because Plaintiff's claims for declaratory and injunctive relief are both claims for

prospective relief, and because Plaintiff cannot show that she may suffer a future injury, she lacks standing to bring these claims.  See McNair, 672 F.3d at 223, 225–26.   Accordingly, the Court should grant Ambit Northeast's motion for summary judgment on Plaintiff's claims for declaratory and injunctive relief.

## V.    CONCLUSION

For the foregoing reasons, Ambit Northeast respectfully requests that the Court grant Ambit Northeast's motion for summary judgment and enter judgment as a matter of law on Plaintiff's remaining claims against Ambit Northeast.

Respectfully Submitted,

_____
Joanna J. Cline
Christina O. Hud
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Tel.:  215.981.4000
Fax:  215.981.4750
clinej@pepperlaw.com
hudc@pepperlaw.com

Stephen C. Rasch
*Pro hac vice*
Michael W. Stockham
*Pro hac vice*
THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, NY 10022-4728
Telephone: 212.751.3014
Facsimile: 214.999.1592
Stephen.Rasch@tklaw.com
Michael.Stockham@tklaw.com

DATE: April 21, 2015

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I, Christina O. Hud, hereby certify that on this 21st day of April 2015, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, which will send notification of such filing to counsel of record for all parties.

Respectfully Submitted,

_____

Joanna J. Cline
Christina O. Hud
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Tel.:  215.981.4000
Fax:  215.981.4750
clinej@pepperlaw.com
hudc@pepperlaw.com

Stephen C. Rasch
*Pro hac vice*
Michael W. Stockham
*Pro hac vice*
THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, NY 10022-4728
Telephone: 212.751.3014
Facsimile: 214.999.1592
Stephen.Rasch@tklaw.com
Michael.Stockham@tklaw.com

*Attorneys for Defendant*