```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMY SILVIS, on behalf of      :     CIVIL ACTION
herself and all others        :     NO. 14-5005
similarly situated            :
                              :
     v.                       :
                              :
AMBIT ENERGY L.P, et al.      :
```

**M E M O R A N D U M**

EDUARDO C. ROBRENO, J.                              MARCH 18, 2016

Presently before the Court is the motion for summary judgment filed by Defendant, Ambit Northeast, LLC ("Ambit"), regarding Counts IX, XI, and XII of the amended complaint filed by Plaintiff, Amy Silvis ("Silvis"). In these counts, Silvis alleges breach of contract, unjust enrichment, and entitlement to declaratory relief. For the reasons that follow, the Court will grant Ambit's motion.

**I.   FACTS AND PROCEDURAL HISTORY**

Silvis contracted with Ambit to supply her with electricity based on a variable rate plan under which she paid a "teaser" rate for the first month and thereafter the rate fluctuated. Silvis asserts that Ambit enticed her to switch her electricity supplier from Penelec with its marketing materials promising savings over other energy suppliers and competitive variable rates. Silvis quickly became disappointed with her

1

decision when it became apparent that Ambit's variable rate plan was not saving her money, but was in fact causing her electricity bill to swell, at times, to nearly double what she would have paid under Penelec. Specifically, she alleges that: (1) in April and May 2014, Ambit charged her $.1369 per kilowatt hour ("kWh") while Penelec charged $.0771/kWh; (2) in June 2014, Ambit charged her $.1489/kWh while Penelec charged $.0823/kWh; (3) in July and August 2014, Ambit charged her $.1489/kWh while Penelec charged $.0925/kWh; (4) in September 2014, Ambit charged her $.1489/kWh while Penelec charged $.0849/kWh; and (5) in October 2014, Ambit charged her $.1489/kWh while Penelec charged $.0703/kWh.

In response, Silvis filed a class action complaint on August 27, 2014 alleging, inter alia, breach of contract. She asserted that Ambit "breached its agreements with Plaintiff and the Proposed Class Members by charging rates that did not meet the contractual obligation to provide a competitive rate based on market factors." Am. Compl., ¶ 105 (ECF No. 16). On December 23, 2014, Ambit filed a motion to dismiss and, on January 6, 2015, filed a motion to transfer venue. (ECF Nos. 19 & 21). On March 13, 2015, after a March 6, 2015 hearing on the motions, see (ECF No. 38), the Court denied the motion to transfer venue, (ECF Nos. 30 & 31), and granted in part and denied in part Ambit's motion to dismiss. (ECF No. 32). Specifically, the Court

2

dismissed all defendants except for Ambit and dismissed all counts except for Count IX for breach of contract, Count XI for unjust enrichment[1], and Count XII seeking declaratory relief regarding future services.

On May 6, 2015, the Court entered a scheduling order setting a briefing schedule for Ambit's motion for summary judgment and for attendant discovery. (ECF No. 43).[2] On May 13, 2015, Ambit filed the pending motion for summary judgment regarding the remaining claims. (ECF No. 45). On October 9, 2015, Silvis responded to the motion after having conducted four months of discovery on the issues relevant to the motion. (ECF Nos. 51 & 52). Ambit filed its reply on October 26, 2015. (ECF Nos. 54 & 55).[3]

---

[1] Pennsylvania law precludes a plaintiff from claiming unjust enrichment if she also pleads the existence of a valid, express contract. Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006). When the Court entered its order on the motion to dismiss, the parties disputed which documents were included in the contract. Concluding that the contract's validity was at issue, and recognizing that a plaintiff may plead unjust enrichment as an alternative to an invalid contract, the Court refused to dismiss this claim. (ECF No. 32, p.4 n.5). As discussed below, the parties now agree on which documents formed the valid contract. Thus, Silvis may no longer maintain her claim for unjust enrichment and the claim will be dismissed.

[2] At the parties' request, the time for discovery related to the motion was extended on August 24, 2015. (ECF No. 50).

[3] The response and reply were filed partially under seal to protect allegedly confidential personal and business information. See August 11, 2015 Protective Order (ECF No. 49).

## II. STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who

---

The Court finds that direct discussion of the sealed information is unnecessary to decide the motion and consequently, there will be no need to file this memorandum under seal.

must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 250 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal quotation marks omitted).

**III. DISCUSSION**

    A.   Contractual Ambiguity

"The court can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted 'is subject to only one reasonable interpretation.'" Atkinson v. LaFayette Coll., 460 F.3d 447, 452 (3d Cir. 2006) (quoting Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999)). "Where the language is clear and unambiguous, the express terms of the contract will control" and there is no need to consult extrinsic evidence to interpret the contract. Id.; Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 92 (3d Cir. 2001). However, when the contractual language at issue is ambiguous in that "it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning," "a court may look to extrinsic evidence to resolve the ambiguity and determine the intent of the parties." In re Diet Drugs(Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab.

Litig., 706 F.3d 217, 223 (3d Cir. 2013) (internal quotation marks omitted).

Although the parties previously disagreed regarding which documents made up the contract, they are now in agreement. Both parties assert that the contract consists of two documents: (1) the Ambit Northeast, LLC Pennsylvania Penelec Service Area Residential Disclosure Statement ("Disclosure Statement"); and (2) the Ambit Pennsylvania Northeast, LLC Service Area Sales Agreement and Terms of Service ("Terms of Service"). Two provisions, one in each document, form the heart of the dispute. The Disclosure Statement provides that: "[y]our rate for the Initial Term and subsequent Renewal Terms may vary dependent upon price fluctuations in the energy and capacity markets, plus all applicable taxes." Am. Compl. Ex. C (ECF No. 16-3, p.2). The Terms of Service provides that: "[i]f you selected a variable rate plan, your initial rate will be shown at the time of your enrollment and thereafter rates are subject to change at the discretion of Ambit Energy." Am. Compl. Ex. B (ECF No. 16-2, p.3).

Silvis contends that these two provisions, when read together, stand for the proposition that Ambit has discretion to change the rate, but only if its decision is based upon price fluctuations in the energy and capacity markets. Silvis asserts

that Ambit exercised its discretion to raise her rate as a result of other unnamed factors.

Ambit argues that the two provisions are clear and do not conflict with each other. It asserts that the provisions provide that Ambit has complete discretion to change the rate, and that one of the reasons it may change the rate is in response to price fluctuations in the energy and capacity markets. Silvis replies that, at a minimum, the provisions are ambiguous and summary judgment is inappropriate.

The Court agrees with Ambit's interpretation. The provision in the Terms of Service reflects that Ambit has discretion in setting the rate it charges for electricity, limited only by the good faith requirement read into contracts. See Bethlehem Steel Corp. v. Litton Indus., Inc., 488 A.2d 581, 600 (Pa. 1985)(providing that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement") (internal quotation marks omitted). The provision in the Disclosure Statement merely informs the customer that her rate *may* vary dependent upon price fluctuations in the energy and capacity markets, but does not otherwise limit Ambit's discretion in setting the rate based on other legitimate factors.

Silvis arrives at her interpretation by inserting the word "only" after "may" in the contract so that the provision

7

reads that the rate "may [only] vary dependent upon price fluctuations in the energy and capacity markets." The word "only" does not appear in the provision, and the Court may not read it into the unambiguous language thereof. See e.g. Bohler-Uddeholm Am., 247 F.3d at 92. If a baseball team posts a sign reading that "the game may be cancelled dependent on rain," that sign is not a promise that it will not be cancelled for some other legitimate reason, such as the other team not showing up or the lights being out.

In that: (1) the parties now agree that the Terms of Service and Disclosure Statement make up the whole of their contract; (2) the contract includes an integration clause indicating that the contract expresses "the entire agreement between the parties," (ECF No. 16-2, p. 4); and (3) the two provisions in the contract are unambiguous and not internally inconsistent, the Court will not look beyond the four corners of the contract to extrinsic evidence, nor will it incorporate new terms to change the contract's plain meaning.[4] See e.g. Atkinson,

---

[4] In addition to attempting to read the word "only" into this provision, Silvis appears to rely on several items of extrinsic evidence such as: her understanding of the contract as contained in her declaration; Ambit's marketing materials; and the impact of 52 Pa. Code § 54.5(c)(2), which requires energy providers to include in their variable pricing statements the "[c]onditions of variability (state on what basis prices will vary)." Whether Ambit's variable pricing statement violated this provision is not at issue here, and whether Silvis relied on this provision when signing the contract is immaterial given the

8

460 F.3d at 452 (providing that the express contract terms control where the language is unambiguous); Rearick v. Pa. State Univ., 416 F. App'x 223, 225 (3d Cir. 2011) (providing that when presented with an unambiguous contract the "court should neither consider extrinsic evidence nor 'read into the contract a term . . . which clearly it does not contain'") (alteration in original) (quoting Seven Springs Farm, Inc. v. Croker, 748 A.2d 740, 744 (Pa. Super. 2000)(en banc)). Having established the clear meaning of the relevant contractual provisions, the Court concludes that unless Ambit breached those provisions, its motion for summary judgment should be granted.

    B.    <u>Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing</u>

Under Pennsylvania law, a breach of contract claim includes the following elements: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (alteration

---

prohibition on extrinsic evidence. The Court also notes that there is no evidence that Silvis was aware of the Code provision when entering into the agreement. The effect of the Code provision is also not the type of extrinsic evidence that could establish latent ambiguity in the contract. See Bohler-Uddeholm Am., 247 F.3d at 94 n.3 (providing that "a party offers the right type of extrinsic evidence for establishing latent ambiguity if the evidence can be used to support a reasonable alternative semantic reference for specific terms contained in the contract," for example, whether "dollars" referenced in the contract are Canadian or U.S.). (internal quotation marks omitted).

in original) (quoting <u>CoreStates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. 1999)). Silvis contends in her amended complaint that Ambit "breached its agreements with Plaintiff and the Proposed Class Members by charging rates that did not meet the contractual obligation to provide a competitive rate based on market factors." Am. Compl., ¶ 105 (ECF No. 16).

There is no express provision in the contract requiring Ambit to provide a competitive rate. Moreover, as described above, the contract between Silvis and Ambit is an unambiguous, fully integrated document made up of the Terms of Service and the Disclosure Statement. <u>See</u> <u>McGuire v. Schneider, Inc.</u>, 534 A.2d 115, 118 (Pa. Super. 1987), <u>aff'd</u>, 548 A.2d 1223 (Pa. 1988) (holding that a contract was fully integrated where it stated that it contained the parties' entire understanding, was not ambiguous, covered the disputed subject matter, and "convey[ed] no suggestion that anything beyond the four corners of the writing [was] necessary in order to ascertain the intent of the parties"). Thus, the Court may not add into the contract a term regarding competitive rates based on extrinsic evidence. <u>See</u> <u>Bohler-Uddeholm Am.</u>, 247 F.3d at 92; <u>Atkinson</u>, 460 F.3d at 452; <u>Rearick</u>, 416 F. App'x at 225. As a result, Silvis has not alleged a breach of an express contractual provision.

Silvis also contends that Ambit breached the

implied covenant of good faith and fair dealing by exercising its rate-adjusting discretion in bad faith. While every contract under Pennsylvania law includes a duty of good faith in performance, there is no separate cause of action for breach of the implied covenant of good faith and fair dealing. Bethlehem Steel Corp., 488 A.2d at 600; Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013). Instead, courts "utilize[ ] the good faith duty as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action." Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000). That duty, however, "is not divorced from the specific clauses of the contract and cannot be used to override an express contractual term." Id.

Ambit recognizes that if Silvis is to succeed, because "the contract gives Ambit discretion to set rates, Plaintiff must establish that Ambit exercised this discretion in bad faith in order to prevail on her breach-of-contract claim." Def.'s Reply (ECF No. 54, p.15). Ambit asserts that Silvis has not provided any evidence to establish bad faith and that, in fact, the evidence shows that its rate adjustments were in good faith.

Ambit argues that its increased rates were due to a polar vortex in early 2014 which produced record cold temperatures. Ambit contends that Penelec, to which Silvis compared Ambit's rates, is a highly regulated entity which

cannot immediately change its prices in accordance with the market, unlike Ambit. It also asserts that Penelec has multiple sources of income that help it absorb negative fluctuations in the energy market. Thus, Ambit contends, a side by side comparison of its rates and those of Penelec do not evidence bad faith pricing and Penelec does not represent the energy market as a whole. It also notes that Penelec did eventually raise its rate when it was authorized to do so, presumably in light of the polar vortex.

Ambit further supports its assertion of good faith by citing to the partially sealed testimony of Michael Chambless, a co-founder of Ambit and its corporate representative. Chambless provided multiple reasonable factors that he asserted Ambit considered when setting its energy rates. He also divulged Ambit's profit margins to show the lack of price gouging. As noted by Chambless, Ambit is a for-profit company, but would not survive if it abused its discretion in setting rates, as Ambit's variable rate customers are under no contract and may switch providers at the end of any given monthly period. See Am. Compl. Ex. B (ECF No. 16-2, p.2).

Silvis does not proffer any legitimate evidence of bad faith. She argues that summary judgment is inappropriate because a jury must still decide whether Ambit violated the spirit of the agreement by unreasonably exercising its discretion in

setting those higher rates. Silvis' argument ignores the fact that she has the burden at this stage to "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 250 (internal quotation marks omitted).

In its motion for summary judgment, Ambit has shown that there is no genuine dispute as to any material fact regarding its lack of bad faith. After four months of discovery, Silvis has provided no more than her bills from Ambit showing higher rates than those offered by Penelec and her declaration regarding her personal expectations.[5] The bills showing a higher

---

[5] As stated, Silvis has not provided any legitimate evidence of bad faith in response to the motion for summary judgment. However, in her brief, Silvis contends that "additional facts and discovery regarding the process by which Ambit determined the prices that it charged Ms. Silvis" are necessary, apparently indicating her belief that discovery of the issues relevant to the summary judgment motion was not completed. (ECF No. 51, pp.11-12). She contends that "[a]s this Court is aware, discovery has been limited just to the issue of whether Ambit had unfettered discretion under the contract." (Id. n.6).

To the contrary, while the parties set aside discovery regarding class certification, the Court provided four months for discovery after Ambit filed its motion for summary judgment to investigate the claims raised in that motion. See (ECF Nos. 43 & 50). Silvis' counsel's own assertion supports this conclusion. Before questioning Chambless at his deposition, Silvis' counsel specifically stated, "before we get started, [defense counsel], it's my understanding that the purpose of this deposition, or the scope, rather, is limited to the topics raised in the amended motion for summary judgment." Pl. Resp., Ex. B, p.5 (ECF No. 51-2 filed partially under seal). Certainly, whether Ambit engaged in bad faith in setting Silvis' rate is an issue directly related to the summary judgment proceedings and should have been fully investigated during those four months.

price for energy than one other provider do not evidence bad faith and Silvis' expectations are irrelevant when viewing the contract within its four corners. Bohler-Uddeholm Am., 247 F.3d at 92; Atkinson, 460 F.3d at 452; cf Hassler v. Sovereign Bank, 374 F. App'x 341, 345 (3d Cir. 2010) (providing that, under New Jersey law, "[w]ithout bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance") (internal quotation marks omitted).[6] As such, Silvis has failed to rebut Ambit's showing that there is no genuine dispute as to any material fact. Therefore, summary judgment will be awarded in favor of Ambit and against Silvis.

**IV.   CONCLUSION**

For the reasons set forth above, the Court will grant Ambit's motion for summary judgment, entering judgment in its favor, and against Silvis.

An appropriate order follows.

---

Silvis may not now legitimately claim that she was not afforded adequate time for discovery on this issue.

[6]      It is of little consequence that Hassler was decided under New Jersey law rather than Pennsylvania law, as "New Jersey provides a broader scope for breach of implied covenant of good faith and fair dealing claims than Pennsylvania." Akshayraj, Inc. v. Getty Petroleum Mktg., Inc., No. 06-cv-2002, 2009 WL 961442, at *1 n.1 (D.N.J. Apr. 8, 2009).