IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMY SILVIS, on behalf of      :      CIVIL ACTION
herself and all others        :      NO. 14-5005
similarly situated            :
                              :
     v.                       :
                              :
AMBIT ENERGY L.P, et al.      :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         February 22, 2018

        Presently before the Court is "Plaintiff's Unopposed
Amended Motion for Preliminary Approval of Class Action
Settlement." Plaintiff Amy Silvis ("Silvis" or "Plaintiff") and
Defendant Ambit Northeast, LLC ("Ambit" or "Defendant") have
agreed to a class action settlement that will resolve the
instant matter, in which Silvis alleges that the Defendant's
acts and omissions, in the course of doing business, constituted
breach of contract and a breach of the covenant of good faith
and fair dealing when it used nondisclosed factors to increase
energy rates to customers.

        For the reasons that follow, the Court will grant the
motion, conditionally certify the Class, and preliminarily
approve the class action settlement.

I.    BACKGROUND

      A.    Factual Background and Procedural History

      In February of 2013, Plaintiff Amy Silvis switched
from her local energy provider to Defendant Ambit after being
enticed with competitive and attractive rates. Am. Compl. ¶ 3.
Plaintiff contends that Defendant solicited customers throughout
Pennsylvania and in other states with "teaser" rates. Id. ¶ 17.
After a short while, Defendant would replace the teaser rate
with a variable rate that Defendant asserted would be based on
market rates. Id. These new rates were allegedly anything but
market-based. Id. ¶ 20. Plaintiff contends that Defendant knew
at the time of its dealings with Plaintiff and other putative
Class members that it was unable to sustain the teaser rates and
that it knew it utilized factors other than market rates to
determine post-teaser rate pricing. Id. ¶¶ 22-24.

      Under the "Residential Disclosure Statement" to which
Silvis agreed, energy rates would be based on "energy and
capacity markets, plus all applicable taxes." Id. ¶ 18. However,
Plaintiff asserts that the energy rates charged by Ambit were
approximately double that of her local energy provider one year
after switching to Ambit. Id. ¶ 30.  Plaintiff alleges Defendant
failed to act in good faith when contracting with her and other
putative Class members because they "ma[de] promises and
contracts they did not intend honor." ¶ 25.

Silvis initiated this action on behalf of herself and others similarly situated on August 27, 2014, against Ambit and its associated entities alleging breach of contract and unjust enrichment. Compl. ¶¶ 58-63, 64-71. The Court has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d).

Defendant filed a motion for summary judgment on May 13, 2015. ECF No. 45. The Court granted the motion on March 21, 2016. ECF No. 57; see Silvis v. Ambit Energy L.P., 170 F.Supp.3d 754 (E.D. Pa. 2016). Plaintiff appealed the Court's order and the Third Circuit vacated summary judgment and remanded for further proceedings on January 9, 2017. Silvis v. Ambit Energy L.P., 674 Fed.Appx. 164 (3d Cir. 2017).

On July 31, 2017, the parties filed a joint stipulation requesting to stay the proceedings pending mediation. ECF No. 76. The parties subsequently participated in a full day mediation at JAMS in Philadelphia, PA conducted by the Hon. Diane Welsh (Ret.). These negotiations resulted in the present Settlement Agreement.

On October 17, 2017, Plaintiff filed the instant motion. ECF No. 81. The Court then conducted a hearing to consider the motion on February 1, 2018. ECF No. 84.

B.    The Proposed Class Action Settlement

The terms of the proposed class action settlement are set forth in the Settlement Agreement, Pl. Mot. Ex. A-1, and are outlined below.

1.    The Proposed Settlement Class

The Settlement Agreement provides for a settlement Class defined as follows:

> All persons in the Commonwealth of Pennsylvania who were enrolled as a customer of Defendant and were on Defendant's Select Variable Plan at any time during the Class Period.

Pl. Mot. Ex. A-1 at 7.

2.    The Proposed Settlement Terms

The Settlement Agreement provides that Ambit will reimburse two subclasses of the putative class action: (1) Class members who enrolled with Defendant between January 1, 2011 and January 12, 2014 will receive a check in the amount of 15% of all amounts paid to Defendant while on the Select Variable Plan; and (2) Class members who enrolled with Defendant between January 13, 2014 and the Preliminary Approval Date will receive a check in the amount of 2% of all amounts paid to Defendant while on the Select Variable Plan.[1] Id. at 11. The parties

---

[1]    A limited number of settlement Class members with enrollment dates from January 13, 2014, through the Preliminary Approval Date did not receive an updated Disclosure Statement from Defendant prior to becoming enrolled in the Select Variable Plan. These members of the settlement Class, if they are

estimate that the potential aggregated pay out for 100% claims participation would be approximately $9,300,000. ECF No. 86.

Notice and claims administration costs will be paid by Ambit. Pl. Mot. Ex. A-1 at 9-10. Ambit will also separately pay Plaintiff Silvis' Named Plaintiff Enhancement Award up to $5,000 and attorneys' fees not to exceed $1,450,000. Id. at 12-13. As of February 1, 2018, the parties estimate that that class counsel's current loadstar is $1,348,000 with $38,000 in expenses. ECF No. 86.

In exchange for the benefits provided by the settlement, settlement Class members agree to release all claims that they alleged or could have alleged in the action. Pl. Mot. Ex. A-1 at 14-15.

II.    DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id. When presented with a class settlement agreement, the court must first determine that the

---

Eligible Class members, will be treated as if they had enrolled on or before January 12, 2014, for purposes of determining the amount of the check they will receive in the settlement. Defendant will provide a list of these settlement Class members, identified by customer number, to Plaintiff's counsel and to the Settlement Administrator within thirty (30) days of the Preliminary Approval Date. Id. at 11 n.1.

requirements for class certification under Rule 23(a) and (b)
are met and then must separately determine that the settlement
is fair to the class under Rule 23(e). In re Nat'l Football
League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d
Cir. 2014).

Where a class action settlement is reached before the
district court has issued a certification order under Rule 23(e)
-- a procedural posture that results in what is often termed a
"settlement class" -- the Advisory Committee's notes to the 2003
Amendment to Rule 23 contemplate that "the decisions on
certification and settlement" may "proceed simultaneously." Fed.
R. Civ. P. 23(e). However, the exact process a district court
should follow when presented with a "settlement class" is not
prescribed by Rule 23(e).

The Federal Judicial Center's Manual for Complex
Litigation (Fourth) explains that "[r]eview of a proposed class
action settlement generally involves two hearings." In re Nat'l
Football League, 775 F.3d at 581 (quoting Manual for Complex
Litigation § 21.632 (4th ed. 2004)). In the first hearing, or
"preliminary fairness review," counsel submit the proposed terms
of the settlement to the court, and the court makes a
"preliminary fairness evaluation." Id. (quoting Manual for
Complex Litigation § 21.632).

If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard, opt out of the class, or object to the settlement. See Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5); Manual for Complex Litigation § 21.633.

After class members are notified, the court proceeds with the second hearing, the formal "fairness hearing" as required by Rule 23(e)(2). Manual for Complex Litigation § 21.633. If the court ultimately concludes that the settlement is "fair, reasonable, and adequate," the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). In the instant motion, Plaintiffs seek preliminary approval.

A.    Whether Class Certification is Proper

During the preliminary fairness evaluation, a court must make a preliminary determination on class action certification for the purpose of issuing a notice of settlement. In re Nat'l Football League, 775 F.3d at 586. Although the court will undertake a "rigorous analysis" as to whether class certification is appropriate at the later fairness hearing, compliance with Rule 23(a) and (b) must still be analyzed at this juncture. Id. at 582-83.

Under Rule 23(a), Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3), under which Silvis seek class certification, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Finally, in addition to the Rule 23(a) and (b)(3) requirements, the Third Circuit imposes another requirement, ascertainabililty of the class, that must be assessed during the Court's preliminary determination on class certification. Carrera v. Bayer Corp., 727 F.3d 300, 306-307 (3d Cir. 2013) (citing Marcus v. BMW of North America, LLC, 687 F.3d, 583, 592-93 (3d Cir. 2013)).

### 1. Rule 23(a) Factors

#### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named

plaintiff demonstrates that the potential number of plaintiffs exceeds forty, the numerosity prong has been met. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is easily satisfied here as Ambit's records show that there are approximately 73,000 possibly affected accounts of current and former customers, rendering joinder of all members highly impracticable.

### b.   Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality element requires that the plaintiffs "share at least one question of fact or law with the grievances of the prospective class." Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013). To satisfy the commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

Commonality exists in this case because all of the settlement Class members' claims stem from a common course of conduct. Each Class member contracted with Ambit in a similar fashion and each alleges that Defendant breached the price terms

in its agreements by utilizing factors not contained in the agreements.

### c. Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994). Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004). The typicality threshold is low. Seidman v. American Mobile Sys., Inc., 157 F.R.D. 354, 360 (E.D. Pa. 1994).

The typicality element is satisfied because Silvis' claims are identical to those of the settlement Class. She alleges the same type of breach of contract arising out of the same conduct to which the other settlement Class members were exposed. All members of the proposed Class were subject to the same Residential Disclosure Statement which purported to list the factors used to determine energy prices. Thus, the Plaintiff is well-suited to represent the other settlement Class members.

d.    <u>Adequacy of Representation</u>

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." <u>Amchem v. Windsor</u>, 521 U.S. 591, 625 (1997). The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the "qualifications of counsel to represent the class," and second, it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u>, 148 F.3d 283, 312 (3d Cir. 1998) (internal quotation marks omitted).

First, Plaintiff's counsel, Jonathan Shub, Esq. of Kohn, Swift & Graf, P.C. and Troy Frederick, Esq. of Marcus & Mack, P.C. have represented to the Court that they have successfully handled multiple class actions and other complex litigation around the country. Pl. Mot. at 9-10. Both firms submitted extensive resumes to the Court. Pl. Mot. Exs. B, C. Counsel took part in extensive negotiations through a neutral mediator which eventuated in the present proposed settlement. The Court concludes that Plaintiff's counsel is well qualified to represent the Class.

Second, Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the settlement Class because she and the absent Class members have an equal interest in the relief offered by the Settlement Agreement, and there is no divergence between Plaintiff's interests and those of the other Class members. Both Plaintiff's and the other Class members' claims arise from the same conduct and they all seek remedies equally applicable and beneficial to them all. Plaintiff and the members of the proposed Class all seek similar relief. The Court concludes that there are no conflicts of interest between the Plaintiff and the Class such that the adequacy of representation requirement is met.

In sum, Plaintiff has demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

## 2.    Rule 23(b)(3) Factors

In addition to satisfying each of the prerequisites in Rule 23(a), a class representative must show that the action falls into at least one of the three categories provided in Rule 23(b). Plaintiffs bring this action under Rule 23(b)(3). Pl. Mot. at 10. Under Federal Rule of Civil Procedure 23(b)(3), a class action may be maintained if: (1) common questions of law or fact predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 624. Further, it assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3), Advisory Committee's Note to 1966 Amendment.

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." In re Warfarin, 391 F.3d at 533-34 (citation and internal quotation marks omitted). When assessing superiority and "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Fed. R. Civ. P. 23(b)(3) lists four factors a court must consider when determining whether the proposed class action is superior to other alternatives: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating

the litigation of the claims in the particular forum; and (D)
the likely difficulties in managing a class action.

Plaintiff satisfies the predominance requirement
because liability questions common to the settlement Class
substantially outweigh any possible individual issues.
Plaintiff's claims and those of the Class are based on the same
legal theories and same uniform conduct: all of the Class
member's claims turn on whether Defendant breached the price
terms in its agreements with them and whether Defendant's rates
were higher than otherwise available in the market.

Regarding superiority:

(a)  It is in the interest of Class members to proceed
with this litigation as a class action since individual
prosecution of the claims is impractical. In that the individual
claims are relatively small and would be outweighed by the cost
of individual litigation, without the Class, individuals might
lack incentive to pursue their claims.

(b)  Neither of the parties has raised an issue of a
competing action to the Court. As such, the proposed class
action is clearly superior to the non-existent alternative
suits.

(c)  Concentrating this litigation in the proposed
class action also indicates superiority because of the

potentiality of multiple forums reaching inconsistent

conclusions on similar issues and facts.

(d)  Because of the predominance of the core issues in

the case, the case is well manageable as a class action.

Ultimately, common questions predominate in this

litigation and resolution of the claims via class action is

superior to individual law suits. Thus, the Court concludes that

the class action meets the predominance and superiority

requirements of Rule 23(b)(3).

### 3.  Ascertainability

In addition to the Rule 23(a) and (b)(3) requirements,

the Third Circuit imposes another requirement under Rule 23:

ascertainability. Byrd v. Aaron's Inc.,784 F.3d 154, 163 (3d

Cir. 2015). In Byrd, the Third Circuit explained that "[t]he

ascertainability inquiry is two-fold, requiring a plaintiff to

show that: (1) the class is defined with reference to objective

criteria, and (2) there is a reliable and administratively

feasible mechanism for determining whether putative class

members fall within the class definition." Id. (internal

quotation marks and citation omitted).

Ascertainability is satisfied by the putative Class,

since Defendant, as part of the mediation discovery, has

identified current and former customers on its Select Variable

Plan along with addresses, phone numbers, and (in some

instances) e-mail addresses. Pl. Mot. at 16, Pl. Mot. Ex. A at 4.

Based on the above, the settlement Class preliminarily satisfies the requirements of Rule 23(a) and (b)(3), as well as the Third Circuit's ascertainability requirement. Therefore, preliminarily certification of the class is proper.

B.    Whether the Proposed Settlement is Fair

Even if the requirements for class certification under Rule 23 are satisfied, the court must approve settlement of a class action and determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). In re Prudential Ins. Co., 148 F.3d at 316-17. In deciding whether to grant preliminary approval of a proposed class action settlement, the court is required to determine only whether "'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorney, and whether it appears to fall within the range of possible approval.'" In re Nat'l Football League Players' Concussion Injury Litig., 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting Mehling v. N.Y. Life Ins., 246 F.R.D. 467, 472 (E.D. Pa. 2007)). A settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for

16

final approval -- fairness, adequacy, and reasonableness -- will be satisfied. Mehling, 246 F.R.D. at 472.

In making this preliminary determination, the Court's "first and primary concern is whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness." In re Nat'l Football League, 301 F.R.D. at 198. The Court must also consider whether the settlement negotiations occurred at arm's length, whether there was significant investigation of Plaintiffs' claims, and whether the proposed settlement provides preferential treatment to certain class members. Id. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).

Defendant has offered compensation of 15% or 2% of all fees paid by the putative Class members, depending on when their respective contractual obligations began. The difference between the amounts is related to changes made to Ambit's contracts after a certain date that potentially weaken the cases of the second category of Class members. The Court finds that there is a conceivable basis for presuming that the fairness, adequacy, and reasonableness of the Settlement Agreement will be demonstrated during the final approval process. The Court notes that Defendant has also agreed to pay the fees associated with

the settlement administrator and the notice requirements. In addition, there is no appearance of preferential treatment in that all Class members are entitled to the same relief depending on their enrollment date. The Settlement Agreement was reached at arms-length and utilized a neutral mediator. On its face, the Settlement Agreement does not disclose grounds to doubt its fairness or other obvious deficiencies.

As a result, the Settlement Agreement appears proper under Rule 23(e)(2).

C.    Whether the Notices Are Adequate

The Court further concludes that the notices of the class action settlement submitted by the parties are adequate. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." Prudential, 148 F.3d at 306. Rule 23 includes two provisions concerning notice to the class members.

First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts. Specifically, the Rule provides that such notice must, in clear, concise and plain

language, state: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) the class member's right to enter an appearance by an attorney; (5) the class member's right to be excluded from the class; (6) the time and manner for requesting exclusion; and (7) the binding effect of settlement on class members. Fed. R. Civ. P. 23(c)(2)(B).

Second, Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." Prudential, 148 F.3d at 327 (internal quotation marks omitted).

The Settlement Administrator, Angeion Group, appears well suited to handle the notice and claims process. See Pl. Mot. Ex. A-4. The parties describe two main forms of notice in their motion. First, they propose a long form notice sent to each Class members' last known address via first class mail and to their email address, if known. Id. Ex. A-2. The long form notice will include a website address and phone number for additional information. Second, a summary notice will be published once in each of the following publications: Philadelphia Inquirer, Pittsburgh Post-Gazette, Harrisburg

Patriot News, Allentown Morning Call, and Erie Times-News. Id. Ex. A-3.

The Court has reviewed the notices and concludes that they explain, in plain language, the settlement and the procedures. Accordingly, the Court finds that the notice program used in this case satisfies Rule 23(c)(2)(B) and (e).

D.   <u>Whether Proposed Class Counsel is Adequate</u>

Fed. R. Civ. P. 23(g) provides that, in appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

After reviewing the motion and attachments, it appears to the Court that counsel has spent a significant amount of time investigating the claims, has extensive experience with class actions as well as with the applicable law, and has adequate resources to properly represent the Class.

Therefore, the Court finds that Jonathan Shub, Esq. of Kohn, Swift & Graf, P.C. and Troy M. Frederick, Esq. of Marcus & Mack, P.C. should be appointed as Class counsel.

**IV. CONCLUSION**

In that Rules 23(a) and (b)(3), as well as the ascertainability requirement have been met, preliminary certification of the settlement class appears proper. Moreover, the terms in the Settlement Agreement, as well as the forms of notice, appear fair, reasonable and adequate. As a result, the Court will grant Silvis' motion for preliminary approval of the Settlement Agreement.

An appropriate order follows.