**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AMY SILVIS, on behalf of herself and all others
similarly situated,

                              Plaintiff,

      vs.

AMBIT NORTHEAST, LLC,

                            Defendant.

No. 2:14-CV-05005-ER

CLASS ACTION

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF <u>ATTORNEYS' FEES AND EXPENSES</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................... ii

I.        BACKGROUND ................................................................................................................. 1

II.      LEGAL ARGUMENT ...................................................................................................... 5

   A.  The Proposed Settlement is Fair and the Award of
       Attorneys' Fees is **Reasonable** ................................................................................. 5

   B.  The Lodestar Method is One of the Appropriate Methods for
       Calculating Attorneys' Fees Where the Nature of the Recovery
       Does Not Allow a Determination of the Settlement's Value ................................... 6

   C.  Plaintiff's Fee Request Satisfies the Third Circuit's Criteria to
       Determine Reasonable Attorneys' Fees ................................................................... 9

     1.  The Gunter/Prudential Factors ........................................................................ 11

     2.  The Class Representative Service Award Should be Approved .................... 17

     3.  Class Counsels' Expenses are Reasonable and the
         Parties' Agreement Related to Expenses Should Be Approved .................... 18

III.     CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allapattah Servs. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................................................................6

*Bell Atlantic Corp. v. Bolger.*,
2 F.3d (3d Cir. 1993) .........................................................................................12

*Blum v. Stenson*,
495 U.S. 886 (1984).............................................................................................8

*Carroll v. Stettler*,
No. 10-2262, 2011 U.S. Dist. LEXIS 121185 (E.D. Pa. Oct. 19,
2011) ....................................................................................................................18

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000).......................................................................14

*D.R. by M.R. v. East Brunswick Bd. Of Educ.*,
109 F.3d 896 (3d Cir. 1997) ..............................................................................5

*Daniyan v. Viridian Energy LLC*,
CIV.A. GLR-14-2715, 2015 WL 4031752 (D. Md. June 30, 2015).................15

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980)............................................................................................6

*Dickerson v. York In't. Corp.*,
No. 1:15-CV-1105, 2017 WL 3601948
(Aug. 22, 2017 (M.D. Pa.))...........................................................................7, 10

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 ........................................................................................................5

*Fleisher v. Fiber Composites, LLC*,
No. 12-1326, 2014 U.S. Dist. LEXIS 29151 (E.D. Pa. Mar. 5,
2014) ......................................................................................................................7

*In re AT&T Corp. Secs. Litig*,
    455 F.3d 160 (3d Cir. 2006) .................................................8

*In re CertainTeed Corp. Roofing Shingle Products Liability
Litigation*,
    269 F.R.D. 468 (E.D.Pa. 2010) ...........................................12

*In re Diet Drugs*,
    582 F.3d 524 (3d Cir. 2009) ...............................................10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ..............................................5, 18

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013)............................................14

*In re KeySpan Corp. Sec. Litig.*,
    No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068
    (E.D.N.Y. Aug. 25, 2005)..................................................12

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
    No. 08-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010)...................9

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ..............................................7, 8

*Kirsch v. Delta Dental*,
    534 F. App'x 113 (3d Cir. 2013) .........................................17

*Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am.
Sales Practice Litig. Agent Actions)*,
    148 F.3d 283 (3d Cir. 1998) ..............................................6, 9

*Krimes v. JPMorgan Chase Bank N.A, No. 15-5087*,
    2017 WL 2262998 (May 24, 2017 E.D.Pa.) (Robreno, j.) ......................9, 17, 18

*Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator &
Standard Sanitary Corp.*,
    487 F.2d 161 (3d. Cir. 1973) .............................................7, 8

*McLaughlin v. IDT Energy*,
    No. 1:14-cv-04107-ENV-RML (S.D.N.Y. 2018)...............................16

*Moore v. GMAC Mortg.*,
   No. 07-4296, 2014 WL 12538188 (E.D. Pa. Sept. 19, 2014)..............................8

*Orange v. Starion Energy PA, Inc*,
   CV 15-773, 2016 WL 1043618 (E.D. Pa. Mar. 16, 2016) (affirmed
   on appeal)...........................................................................................15

*Pennwalt Corp. v. Plough*,
   676 F.2d 77 (3d Cir. 1982) ..................................................................5

*Perdue v. Kenny A.*,
   559 U.S. 542 (2010).............................................................................7

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990) ..............................................................8

*Shop-Vac Mktg. & Sales Practices Litig.*,
   No. 2380, 2016 U.S. Dist. LEXIS 170841,
   at *24 (M.D. Pa. Dec. 9, 2016) ...........................................................5

*Silvis v. Ambit Energy L.P.*,
   170 F.Supp.3d 754 (E.D. Pa. 2016)......................................................3

*Silvis v. Ambit Energy L.P.*,
   674 Fed.Appx. 164 (3d Cir. 2017).......................................................3

*Skelton v. Gen. Motors Corp.*,
   860 F.2d 250 (7th Cir. 1988) .............................................................15

*Sobiech v. U.S. Gas & Electric*,
   No. 2:14-CV-04464 (Nov. 18, 2017 E.D.Pa.) ...............................8, 16

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................................5, 18

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)............................................................10

*Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides
   Litig.)*,
   243 F.3d 722 (3d Cir. 2001) ...............................................................9

*Wise v. Energy Plus Holdings, Inc.*,
    No. 11-7345-WHP (Sept. 17, 2013 S.D.N.Y. 2013) ..........................................16

*Yeager v. Suburu of Am. Inc.*,
    No. 1:14-cv-4490, 2016 WL 4547126 (August 31, 2016 E.D.Pa.)....................10

**RULES**

Fed. R. Civ. P. 23(h) .............................................................................................1, 6

Federal Rules of Civil Procedure Rule 23 .................................................................6

**OTHER AUTHORITIES**

*Dickerson v. York In't. Corp*,
    No. 1:15-CV-1105, 2017 WL 3601948........................................................7, 10

*Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380 .................................................5

## I.    BACKGROUND

Pursuant to Fed. R. Civ. P. 23(h), and as set forth in the parties' Settlement Agreement, Class Counsel respectfully seek the Court's final approval of attorneys' fees and Class Counsels' out-of-pocket expenses in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00). (Dkt. 81-1).  This amount will be paid by Ambit Northeast LLC ("Ambit" or "Defendant") and is separate from and in addition to the payment of the Settlement Amount to the eligible members of the Settlement Class.  (*Id.*)[1]

This case has been hotly contested from the outset and required significant expenditures of resources and skilled lawyering both in the Trial Court and in the Third Circuit.  As Plaintiff's Amended Complaint describes in detail, in February of 2013, Plaintiff Amy Silvis switched from her local energy provider to Ambit after being enticed with attractive "teaser" rates. (Dkt. 16 at  ¶¶ 3, 17). After a short while, Defendant would replace the fixed, teaser rate with a variable rate that Defendant asserted would be based on market rates. Id. These new rates were allegedly anything but market-based. (*Id.* at ¶ 20). Plaintiff alleged that Ambit did not use market rates to set its energy prices and that it utilized factors other than market rates to determine post-teaser rate pricing. (Id. at ¶¶ 22-24).

---

[1] Plaintiff will be filing a Motion for Final Approval of the Settlement in a separate filing on July 9, 2018. Plaintiff is filing this instant Motion prior to the deadline for filing objections so that Class Members can view Class Counsel's position on their entitlement to fees. *See Order Granting Preliminary Approval* (Dkt. 90).

Plaintiff alleged that, under the "Residential Disclosure Statement" energy rates would be based on "energy and capacity markets, plus all applicable taxes." (*Id*. at ¶ 18). However, Plaintiff asserts that the energy rates charged by Ambit were approximately double that of her local energy provider one year after switching to Ambit. (*Id.* at ¶ 30). Plaintiff alleged that Ambit breached its contract with her and the Class by charging rates for their variable electricity that were not competitive with other suppliers, other wholesale market services, or in line with genuine market-related factors.  (*Id*. at ¶ 6).

Silvis initiated this action on behalf of herself and others similarly situated on August 27, 2014, against Ambit and its associated entities alleging breach of contract and unjust enrichment, and then amended her complaint in response to a motion to dismiss. (Dkt. 9).  Defendant responded to the Amended Complaint by filing a motion to dismiss, (Dkt. 19), and a motion to transfer venue. (Dkt. 21). Plaintiff opposed both motions (Dkts. 22, 23). The Court denied the motion to transfer (Dkt. 30) and granted in part and denied in part the motion to dismiss (Dkt. 32).

After the parties engaged in discovery directed at the breach of contract issues, Ambit filed an amended motion for summary judgment. (Dkt. 45). Plaintiff opposed the motion. (Dkt. 52). The Court granted the motion, finding that the contract gave Ambit wide discretion in setting its energy pricing and that its

conduct did not breach the contract. *See Silvis v. Ambit Energy L.P.*, 170 F.Supp.3d 754 (E.D. Pa. 2016) (Dkt. 56).

Plaintiff appealed the Court's order and the parties engaged in extensive appellate briefing. On January 9, 2017, the Third Circuit vacated the summary judgment and remanded the action for further proceedings. *See Silvis v. Ambit Energy L.P.,* 674 Fed.Appx. 164 (3d Cir. 2017).

After the remand, the parties engaged in more discovery and continued to prepare the case for trial. The Parties then conducted written discovery and Plaintiff secured the depositions of several members of Ambit senior management. In addition to formal discovery, Plaintiff also conducted informal discovery and extensive research into the applicable law with respect to the claims and defenses and with respect to class certification issues. At the same time, the parties engaged in settlement discussions, leading to a full day mediation at JAMS in Philadelphia, PA conducted by the Hon. Diane Welsh (Ret.). These negotiations resulted in the execution of the settlement agreement.

Plaintiff, through Class Counsel, negotiated a settlement that provides significant benefits to the Class. The first group of Class Members, those with dates of enrollment as an Ambit Customer from January 1, 2011, through January 12, 2014, and who were on Ambit's Select Variable Plan at any time, will receive a check in the amount of 15% of all amounts paid to Ambit for the Time Periods

during which such Settling Class Members were on the Select Variable Plan. The second group of Class Members, those with dates of enrollment as an Ambit Customer from January 13, 2014, through the date of Preliminary Approval, and who were on Ambit's Select Variable Plan at any time, will receive a check in the amount of 2% of all amounts paid to Ambit for the Time Periods during which such Settling Class Members were on the Select Variable Plan. (Dkt. 81-1). To date, approximately 8,500 claims have already been submitted to the Court-appointed Claims Administrator, demonstrating the positive reaction of the Settlement Class to the settlement.

Pursuant to the Settlement Agreement, Class Counsel now respectfully request the Court to approve $1,450,000 as attorneys' fees which includes reimbursement of Class Counsel's expenses in the amount of $39,304.01 and a service award of $5,000 to the Class Representative. The attorneys' fees requested will compensate Class Counsel for all work already performed, as well as all of the work that still remains to be completed in connection with the Settlement, which includes, without limitation, addressing Class Member inquiries, insuring that the Settlement is fairly administered and implemented, preparing for and attending the Final Approval Hearing, and obtaining dismissal of the action. As detailed below, the requested attorneys' fees and costs are in accordance with Third Circuit law

regarding awarding and approving attorneys' fees and costs in class actions like this one. Accordingly, Class Counsels' application should be granted.

## II.   LEGAL ARGUMENT

### A.   The Proposed Settlement is Fair and the Award of Attorneys' Fees is Reasonable

The Third Circuit has long had a "strong presumption in favor of voluntary settlement agreements, which [it has] explicitly recognized with approval." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (*citing Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982)); *accord Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380, 2016 U.S. Dist. LEXIS 170841, at *24 (M.D. Pa. Dec. 9, 2016). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart,* 609 F.3d at 595; *see D.R. by M.R. v. East Brunswick Bd. Of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). "The law [in this Circuit] favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (citing cases).

The Settlement, which has already been preliminarily approved by the Court, is not only fair, reasonable and adequate, but also provides an excellent result for Plaintiff and Settlement Class Members.

The Supreme Court has observed that, without the possibility of recovering an attorneys' fee, most class actions would never be filed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (observing that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved person may be without any effective redress unless they may employ the class action device"); *Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1216-17 (S.D. Fla. 2006) (parallel citations omitted). An award of attorneys' fees is within the sound discretion of the Court. Fed. R. Civ. P. 23(h). "Absent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interest of those lawyers who would prefer to take minor sums to serve their self-interest rather than obtaining real justice on behalf of their injured clients." *Allapattah Services, Inc.* 454 F. Supp. 2d at 1217.

**B.     The Lodestar Method is One of the Appropriate Methods for Calculating Attorneys' Fees Where the Nature of the Recovery Does Not Allow a Determination of the Settlement's Value**

There are two conventional methods of calculating attorneys' fees in class actions — the percentage of recovery method and the lodestar method. *E.g., Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 333 (3d Cir. 1998). The lodestar method is the

preferred method of calculating fees where, as here, there is no common fund. *See, e.g.*, *Dickerson v. York In't. Corp*, No. 1:15-CV-1105, 2017 WL 3601948 (Aug. 22, 2017 (M.D. Pa.). [2] As the Third Circuit has explained, "[t]he lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). "Developed after the practice of hourly billing had become widespread [citation], the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010).

To weigh the appropriateness of a lodestar calculation, courts use a two-step process. First, the "court ascertain[s] the lodestar figure by multiplying the number of hours reasonably worked by the reasonable normal hourly rate of counsel." *Fleisher v. Fiber Composites, LLC*, No. 12-1326, 2014 U.S. Dist. LEXIS 29151, at *39-40 (E.D. Pa. Mar. 5, 2014) (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-68 (3d Cir. 1973)). Second, the

---

[2] The lodestar approach was pioneered by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d. Cir. 1973).

court "adjusts the lodestar to take into account, among other things, the result achieved, the quality of the representation, the complexity and magnitude of the litigation, and public policy considerations." *Id.*, at *41 (citing *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305-06 (3d Cir. 2005)); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

"Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar […] [which] is presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stenson*, 495 U.S. 886, 897 (1984)). Once a lodestar is determined, "the district court has the discretion to make certain adjustments to the lodestar." (*Id.*). Such adjustments may include a multiplier. *See Lindy Bros.*, 540 F.2d at 117.

Here, Class Counsel are reporting their lodestar using the method endorsed by the Third Circuit. Based on these figures, Class Counsels' current cumulative lodestar is $1,367,506.00. *See* Declaration of Jonathan Shub at ¶ 17, 25; Declaration of Troy M. Frederick at ¶ 21. [3] This figure, representing 2187.8 hours

---

[3] Class Counsel's then current rates were approved in this District in another settlement involving allegations of overcharging of energy prices. *Sobiech v. U.S. Gas & Electric*, No. 2:14-CV-04464 (Nov. 18, 2017 E.D.Pa.) (Dkt. 64). Class Counsel submits that these rates are "reasonable in light of the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re AT&T Corp. Secs. Litig,* 455 F.3d 160, 164 (3d Cir. 2006) (internal quotations and citations omitted); *Moore v. GMAC Mortg.*, No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (finding reasonable rates between $325 and $860 per hour); *In re*

of professional time at an average hourly rate of approximately $623.00, does not include the costs of preparing papers for and appearing at the Final Approval Hearing, or for work relating to claims administration and communicating with class members during the rest of the claims period. *See* Declaration of Jonathan Shub at ¶ 25. Plaintiff estimate that another $35,000 to $50,000 of lodestar will be incurred in connection with such tasks. (*Id.* at ¶ 22).

Multipliers between one and four are routinely approved by courts in the Third Circuit. *See* e*.g., Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.),* 243 F.3d 722, 742 (3d Cir. 2001) (*citing In re Prudential*, 148 F.3d at 341). Here, Class Counsel is requesting a multiple of lodestar of 1.1 which is at the very bottom of the acceptable range. Class Counsel respectfully submit that the requested fee is fair and appropriate and should be awarded as requested.

## C. Plaintiff's Fee Request Satisfies the Third Circuit's Criteria to Determine Reasonable Attorneys' Fees

While the Third Circuit's criteria to calculate appropriate attorneys' fees was promulgated under the percentage of the value method, courts often use this same criteria in determining reasonable fees under the lodestar method in cases where, like here, there is no common fund. *See, e.g., Krimes v. JPMorgan Chase Bank N.A.,* No. 15-5087, 2017 WL 2262998, at *10 (May 24, 2017 E.D.Pa.) (Robreno,

---

*Merck & Co., Inc. Vytorin Erisa Litig.,* No. 08-285DMC, 2010 WL 547613, at *13 (D.N.J. Feb. 9, 2010) (approving rates up to $835 per hour).

j.); *Dickerson v. York In't. Corp*, No. 1:15-CV-1105, 2017 WL 3601948 *(*Aug. 22, 2017 (M.D. Pa.*); Yeager v. Suburu of Am. Inc.,* No. 1:14-cv-4490, 2016 WL 4547126 (August 31, 2016 E.D.Pa.).

Known as the *Gunter/Prudential* factors, these criteria are:

1. The size of the fund and the number of persons benefited;

2. Whether members of the class have raised substantial objections to the settlement terms or fee proposal;

3. The skill and efficiency of the attorneys involved;

4. The complexity and duration of the litigation;

5. The risk of nonpayment;

6. The amount of time devoted to the case by Plaintiffs' counsel;

7. The fee awards in similar cases;

8. The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;

9. The percentage fee that would be been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and

10. Any innovative terms of settlement.

(*Id.* at *23-*24 (citing *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009)).

"Determining an appropriate award, however, is not an exact science." *Varacallo v.*

*Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 248 (D.N.J. 2005) (internal citations omitted).

## 1. The *Gunter/Prudential* Factors

The first *Gunter/Prudential* factor, the size of the fund and the exact number of persons who will benefit, lends itself to approval of the fee. The size of the class is approximately 73,000. The settlement will compensate all Class Members who timely submit a completed claim form.[4] There is no "cap" on the number of claims that Ambit will honor nor will class members be subject to a pro rata calculation.

The second *Gunter/Prudential* factor is whether members of the class have raised substantial objections to the settlement terms or fee proposal. Direct notice of the Settlement was issued to Settlement Class Members on March 15, 2018. Settlement Class Members have the right to object to the fairness, reasonableness or adequacy of the Settlement no later than by May 4,2018. (Dkt. 90 at ¶ 8). As of the date of this filing, there has not been a single objection to the settlement even with *direct notice* being disseminated to 95% of the roughly 74,000 Settlement Class Members, as well as publication notice across the Commonwealth.[5] As such, this factor strongly supports Class Counsels' fee request. See *Bell Atlantic Corp. v.*

---

[4] While is there is not a "fund" in the traditional sense, Ambit has agreed to compensate all class members who submit a timely claim with no ceiling or other limits on the amount on a per class member basis.

[5] At the same time, the Settlement Administrator has already received approximately 8,500 claims to date, and the claims period will remain open until May 4, 2018.

*Bolger.,* 2 F.3d at 1314, n.15 (3d Cir. 1993) (silence is "tacit consent" to settlement); *In re CertainTeed Corp. Roofing Shingle Products Liability Litigation*, 269 F.R.D. 468, 485 (E.D.Pa. 2010) ("The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class.").

The third *Gunter/Prudential* factor, the skill and efficiency of the attorneys involved, is detailed in Class Counsels' prior *Plaintiff's Unopposed Motion For Preliminary Approval Of Class Action Settlement*. (Dkt. 81). Class Counsel are nationally and regionally recognized in consumer class action and product liability class action cases, and put all of their skill and experience to work in the service of Plaintiff and Class Members in this case. Class Counsels' highly-informed, diligent and efficient prosecution of this matter positioned Plaintiff to successfully resolve this case, affording her redress, while avoiding the expense and risk attendant with a trial and possible second appeal.

The quality of opposing counsel is also important in evaluating the quality of Class Counsels' work.[6] As the Court is aware, Defendant is represented by experienced and skilled attorneys, both in house and from Thompson Knight, LLP and Pepper Hamilton, LLP, both global law firms. These attorneys for Defendant

---

[6] *In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.").

demonstrated vigorous advocacy in the defense of this case. Accordingly, the third factor supports the requested fee.

The fourth *Gunter/Prudential* factor, the complexity and duration of the litigation, is also supported by the litigation of this case. Prior to filing the case, Plaintiff expended a significant amount of time and resources determining the extent of the alleged overcharges, investigating the deregulated energy market in Pennsylvania, and weighing the likelihood of prevailing. After this case was filed, Plaintiff successfully opposed Defendant's motions to transfer and to dismiss. Plaintiff also engaged in briefing of the summary judgment motion in both this Court and in the Third Circuit. Plaintiff participated in extensive discovery and subsequent arm's length negotiations. Class Counsel obtained and reviewed thousands of pages of discovery documents, took five depositions of Ambit senior management and engaged in numerous and intense negotiations with Defendant and its counsel. Plaintiff certified the Settlement Class for purposes of settlement and received preliminary approval of the Settlement Agreement—and participated in the claims administration process.

In class action cases where the case is typically based upon a contingency fee, the fifth *Gunter/Prudential* factor, "the risk of nonpayment" for hours expended is high. Class Counsel here likewise assumed a huge risk in filing and litigating this case on a fully contingent basis, investing time, effort and money

with no guarantee of any recovery. Class Counsel also proceeded knowing that there was a chance that Defendant would prevail and that, even if Plaintiff prevailed, the case would likely take years to resolve. The risk of no recovery in consumer protection class actions is very real, as is the risk that plaintiff's counsel in contingent fee class cases, after devoting thousands of hours of attorney time and advancing significant sums in litigation expenditures, will receive no compensation whatsoever. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 146 (D.N.J. 2013)) ("[T]he risk of maintaining class action status throughout the trial[] weighs in favor of approval of the Settlement."); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000).

Also supporting the fifth *Gunter/Prudential* factor, "the risk of nonpayment" was heightened by a number of cases related to alleged variable rate electricity over charges, similar to the one before the Court, that were dismissed at various points in the litigation, with no relief obtained for putative class members. *E.g. Orange v. Starion Energy PA, Inc,* CV 15-773, 2016 WL 1043618, at *1 (E.D. Pa. Mar. 16, 2016) (affirmed on appeal); *Daniyan v. Viridian Energy LLC*, CIV.A. GLR-14-2715, 2015 WL 4031752, at *1 (D. Md. June 30, 2015).

As a result, the putative class members in those cases did not benefit from classwide resolution, and putative class counsel's fees and expenses remained uncompensated. Importantly, courts have made clear that if, by their skill and

determined efforts, plaintiff's counsel ultimately secure a settlement, that fact does not diminish the risk they assumed at the case's inception. *See Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them.").

The sixth factor, the amount of time devoted to the case by Plaintiff's counsel, discussed above, is well established by Class Counsels' contemporaneously logged time and expense records (which are reflected in the accompanying Declarations of Class Counsel and attached exhibits), which strongly support Class Counsels' fee request. The multiplier for Class Counsels' requested fee is 1.1 of their lodestar. Here, as the Court is aware, this case involved a substantial amount of work to bring it to a successful conclusion. Since this case was filed in 2014, Plaintiff conducted an extensive investigation, opposed Defendant's motions to dismiss, engaged in appellate briefing, conducted substantial discovery so that the parties could negotiate on an entirely informed basis, and participated in extensive negotiations. There is still significant work to do in connection with final approval and working with class members to ensure claims are honored and paid.

The seventh factor, the fee awards in similar cases, also strongly supports approval of Class Counsels' fee request. In *Wise V. Energy Plus Holdings LLC*, the

parties reached a settlement of nearly identical claims. The court in the United States District Court for the Southern District Of New York approved attorneys' fees, costs, and expenses in the amount of $3,300,000 where the economic value of the settlement was between $12,478,451.00 and $14,314,142.00.[7] *Wise v. Energy Plus Holdings, Inc.*, No. 11-7345-WHP (Sept. 17, 2013 S.D.N.Y. 2013) (Dkt. 74). Another recent case with similar allegations recently achieved preliminary approval where the fee, costs and expenses requested is $4,250,000. *McLaughlin v. IDT Energy*, No. 1:14-cv-04107-ENV-RML (S.D.N.Y. 2018).[8]

The ninth *Gunter/Prudential* factor, a comparison of the fee to a percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, is inapposite here.[9] Because the settlement terms call for a negotiated fee, a percentage fee compared to the total value of the settlement cannot be determined because the exact number of claimants and the total value of the settlement is unknowable at this time because of how the settlement is structured.

---

[7] As Plaintiff explained in a letter filed with the Court to support the preliminary approval motion, the parties agree that the value of the Settlement to the Class is approximately $9,000,000. (Dkt. 86). The value will be more fully discussed in Plaintiff's Memorandum in Support of Final Approval to be filed on or before July 9, 2018.

[8] The *Sobiech* case cited *supra* is not comparable because that case involved a common fund of $1,500,000.

[9] The eighth *Gunter/Prudential* factor, the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, is also not applicable here.

Finally, the tenth *Gunter/Prudential* factor captures the essence of this Settlement Agreement. The terms here are innovative and beneficial for Settlement Class Members. Specifically, as a result of the Settlement, Defendant will not require Settlement Class Members to actually prove that the price they were charged for variable rate electricity was not based on market related factors. The terms of the Settlement provide significant relief to Class Members with less difficulty and no need for expensive and time consuming litigation and without requiring class members to pay for expensive expert evaluation of their claims.

### 2. The Class Representative Service Award Should be Approved

Plaintiff requests that the Court approve a service award in the amount of $5,000 for Class Representative, Amy Silvis. As the court in *Krimes* explained, service awards "'compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation and [ ] reward the public service of contributing to the enforcement of mandatory laws.'" *Krimes*, 2017 WL 2262998, at *11, *quoting Sullivan*, 667 F.3d at 333 n.65.

Ms. Silvis' efforts were helpful in achieving the Settlement on behalf of the Class and justify the award requested here. Ms. Silvis came forward to prosecute this litigation for the benefit of the class as a whole. She sought successfully to remedy a widespread wrong and have conferred valuable benefits upon her fellow class members. She provided a valuable service to the class in both the

prosecution and settlement of this action, including producing documents and answering interrogatories as well as consulting about the settlement terms. Although her scheduled deposition was cancelled due to the parties' settlement negotiations, Ms. Silvis was fully prepared to provide testimony on behalf of herself and the class.. *See* Declaration of Troy M. Frederick at ¶ 11.

### 3. Class Counsels' Expenses are Reasonable and the Parties' Agreement Related to Expenses Should Be Approved

In addition to being entitled to reasonable attorneys' fees, it is well-settled that prevailing Plaintiff's attorneys are "entitled to reimbursement of reasonable litigation expenses." *E.g., Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121185, at *26 (E.D. Pa. Oct. 19, 2011) (*citing In re GMC Pick-Up Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3rd Cir. 1995)).

Class Counsels' out-of-pocket expenses incurred in this litigation currently total approximately $39,705.90. *See* Declaration of Jonathan Shub, ¶ 29. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as copying fees, expert fees, computerized research, travel in connection with this litigation, and discovery expenses. All of the expenses were reasonable and necessary for the successful prosecution of this case and should be approved. Further, Class Counsel will incur additional expenses on this case going forward, including working with the Settlement Administrator, communicating with Settlement Class Members, overseeing the settlement

administration process, drafting the Motion for Final Approval of the Settlement, and attending the Final Approval Hearing. Accordingly, Class Counsel requests that the Court approve reimbursement of their reasonable out-of-pocket expenses.

## III. <u>CONCLUSION</u>

Based upon the foregoing reasons, Class Counsel respectfully request that the Court approve their request for attorneys' fees, out-of-pocket expenses and a $5,000

service award to Ms. Silvis in the total amount of $1,450,000.00.

Dated: April 13, 2018      Respectfully submitted,

 /s/ Jonathan Shub
Jonathan Shub, Esquire
**KOHN SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700 Telephone
(215) 238-1968 Facsimile
Email: jshub@kohnswift.com

Troy M. Frederick, Esquire
**Marcus & Mack, P.C.**
57 South Sixth Street
Indiana, PA 15701
Phone: (724) 349-5602
Fax: (724) 349-8362
Email: TFrederick@Marcusandmack.com

*Counsel for Plaintiff and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the forgoing *Memorandum of Law in Support of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Expenses* was served via the Court's ECF system upon all counsel of record on April 13, 2018.

*/s/ Troy M. Frederick*
Troy M. Frederick Esquire
*Counsel for Plaintiff and Settlement Class*