IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMY SILVIS, on behalf of   :   CIVIL ACTION
herself and all others   :   NO. 14-5005
similarly situated   :
  :
    v.   :
  :
AMBIT ENERGY L.P, et al.   :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                  August 16, 2018


       Presently before the Court are Plaintiffs' Unopposed
Motion for Final Approval of Class Action Settlement and
Plaintiffs' Unopposed Motion for Approval of Attorney's Fees and
Expenses. After private mediation, Plaintiff, Amy Silvis, and
Defendant, Ambit Energy, have agreed to settle Silvis' claims
that Ambit Energy breached her electricity contract and the
covenant of good faith and fair dealing by using nondisclosed
factors to increase its energy prices. Ambit Energy has also
agreed to pay, from a separate fund, attorney fees, costs, and a
service award.

       For the reasons that follow, the Court will grant both
motions.

## I.    BACKGROUND

### A.    Factual and Procedural History

In February of 2013, Silvis switched from her local energy provider to Ambit Energy after being enticed with attractive rates. Silvis contends that Ambit Energy solicited customers throughout Pennsylvania and in other states with "teaser" rates. After a short while, Ambit Energy would replace the teaser rate with a variable rate that it asserted would be based on "energy and capacity markets, plus all applicable taxes." However, Silvis contends that the variable rate was not based solely on market pricing and, by one year after switching to Ambit Energy, was approximately double that of her local energy provider. Silvis alleges that Ambit Energy knew it would not base its rates solely on market prices and failed to act in good faith when contracting with her and other putative class members.

Silvis initiated this action on behalf of herself and others similarly situated on August 27, 2014, against Ambit Energy and its associated entities alleging breach of contract and unjust enrichment. The Court has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d).

Ambit Energy filed a motion for summary judgment on May 13, 2015. ECF No. 45. The Court granted the motion on March 21, 2016 after finding that the contract language at issue was

unambiguous. ECF No. 57; see Silvis v. Ambit Energy L.P., 170 F. Supp.3d 754 (E.D. Pa. 2016). Silvis appealed this Court's order, and on January 9, 2017, the Third Circuit vacated summary judgment after concluding that the contract terms were ambiguous, remanding the case for further proceedings. Silvis v. Ambit Energy L.P., 674 Fed. App'x. 164 (3d Cir. 2017).

On July 31, 2017, the parties filed a joint stipulation requesting to stay the proceedings pending mediation. ECF No. 76. The parties subsequently participated in a full day mediation at JAMS in Philadelphia, Pennsylvania conducted by the Hon. Diane Welsh (Ret.). These negotiations resulted in the present Settlement Agreement.

After a February 1, 2018 hearing, the Court granted Silvis' motion to conditionally certify the settlement class and for preliminary approval of the settlement. ECF Nos. 89-90. The order also set, inter alia, notice procedures; dates for opting in and out of the settlement; and a date for the final approval hearing.

Silvis filed her Unopposed Motion for Approval of Attorney's Fees and Expenses on April 13, 2018 and her Unopposed Motion for Final Approval of Class Action Settlement on July 9, 2018. ECF Nos. 91-94. On August 8, 2018, the Court held a hearing on the motions.

B.    The Proposed Class Action Settlement

The terms of the proposed class action settlement are set forth in the Settlement Agreement and Release ("Settlement Agreement"), see, e.g., ECF No. 79-2, and are outlined below.

1.    The Proposed Settlement Terms

The Settlement Agreement provides that Ambit Energy will reimburse two subclasses of class members: (1) those who enrolled in its Select Variable Plan between January 1, 2011 and January 12, 2014 will receive a check in the amount of 15% of all amounts paid; and (2) those who enrolled in its Select Variable Plan between January 13, 2014 and the Preliminary Approval Date will receive a check in the amount of 2% of all amounts paid.[1] The parties estimate that the potential aggregated pay out for 100% claims participation would be $9,300,000.

Notice and claims administration costs were paid by Ambit Energy. Ambit also agreed to separately pay Silvis' service award of up to $5,000 and attorney's fees and costs of up to $1,450,000. In exchange for the benefits provided by the

---

[1]    A limited number of settlement class members with enrollment dates from January 13, 2014, through the Preliminary Approval Date did not receive an updated Disclosure Statement from Ambit Energy prior to becoming enrolled in the Select Variable Plan. These members of the settlement class will be treated as if they had enrolled on or before January 12, 2014, for purposes of determining the amount of the check they will receive.

settlement, the class members agreed to release all claims that they alleged or could have alleged in the action.

### 2. Class Notice

The parties selected, and the Court approved, Angeion Group to disseminate notice and handle claims administration. Angeion Group certified that it complied with the approved notice program. ECF No. 93. As part of the notice program, Angeion Group, after updating addresses through the United States Postal Service, sent long form notices to 73,676 class members' last known addresses and to 71,782 email addresses. Of the 6,783 mailed notices that were returned as undeliverable, Angeion Group was able to successfully resend 4,844 of them. It also successfully sent notices to 59,872 of the email accounts. The settlement website, which included information about the settlement, all forms, as well as on-line claim submission, received 13,634 visitors. The toll-free phone number received 1,044 calls. Angeion Group also had a summary notice published in the Philadelphia Inquirer, Pittsburgh Post-Gazette, Harrisburg Patriot News, Allentown Morning Call, and Erie Times-News.

Angeion Group received 12,542 timely claim forms, ten requests for exclusion from the settlement, and no objections to the settlement. Thus, the notice program generated approximately a 17% claims rate.

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id. The factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 299 (3d Cir. 1998) (quoting Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975)).

Where, as here, the court has not already certified the class prior to evaluating the settlement, it must determine whether the proposed settlement class satisfies the requirements of Rule 23(a) and (b), and then separately determine whether the settlement is fair to the class under Rule 23(e). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 619 (1997); In re Nat'l Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014); In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 341 (3d Cir. 2010).

Under Rule 23(h), at the conclusion of a successful class action, class counsel may apply to a court for an award of attorney's fees. The amount of an attorney's fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes finding of fact not clearly erroneous[.]" Sullivan v. DB Invs., Inc., 667 F.3d 273, 329 (3d Cir. 2011) (en banc) (internal quotation marks omitted).

A.    Whether Class Certification Is Proper

At the final fairness stage, the court must undertake a "rigorous analysis" as to whether class certification is appropriate. In re Nat'l Football League Players, 775 F.3d at 582-83, 586. Under Rule 23(a), a plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3), under which Silvis seeks class certification, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These twin requirements

are commonly referred to as predominance and superiority. <u>Sullivan</u>, 667 F.3d at 296.

Finally, in addition to the Rule 23(a) and (b)(3) requirements, the Third Circuit imposes another factor that must be considered by the court: the ascertainabililty of the class.

### 1. Rule 23(a) Factors

#### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds forty, the numerosity prong has been met. <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is easily satisfied here as Ambit Energy's records show that there are 73,676 settlement class members.

#### b. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality element requires that a plaintiff "share at least one question of fact or law with the grievances of the prospective class." <u>Rodriguez v. Nat'l City Bank</u>, 726 F.3d 372, 382 (3d Cir. 2013). To satisfy the commonality requirement, class claims "must depend upon a common contention . . . of such

a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Commonality exists in this case because all of the class members' claims stem from common issues such as what the rate term was for the supply of variable rate electric services, whether Ambit Energy breached its contracts with its customers in setting the actual variable rate charged, and the amount that Silvis and other members of the class have been injured.

     c.   Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994). Where claims of the representative plaintiff arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004).

The typicality element is satisfied because Silvis' claims are identical to those of the settlement class. All of the claims arise out of Ambit Energy's practices with respect to variable electricity rates. All of the class members share the same legal theories and all seek the same relief.

d.   Adequacy of Representation

Rule 23(a)(4) requires a representative plaintiff to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." Amchem, 521 U.S. at 625. The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the "qualifications of counsel to represent the class," and second, it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." Prudential, 148 F.3d at 312 (internal quotation marks and citations omitted).

First, class counsel is adequate.  They have consulted with experts regarding the operation of the wholesale electricity market in Pennsylvania and conducted substantial discovery. Class counsel also have significant experience in litigating consumer class actions and other complex commercial cases.

Second, there are no conflicting or antagonistic claims. Silvis' claims are consistent with those of the class. The claims she asserted in her amended complaint and the terms of the Settlement Agreement apply the same to all class members and do not allow for preferential treatment. Silvis' interests are aligned with those of all class members, and all class members will have an equal opportunity to obtain benefits under the Settlement Agreement based on when they purchased electricity from Ambit Energy.

In sum, Silvis has demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

### 2. Rule 23(b)(3) Factors

In addition to satisfying each of the prerequisites in Rule 23(a), a class representative must show that the action falls into at least one of the three categories provided in Rule 23(b). Silvis brings this action under Rule 23(b)(3). Under Rule 23(b)(3), a class action may be maintained if: (1) common questions of law or fact predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. Further, it assesses

whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note to 1966 Amendment.

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." Warfarin, 391 F.3d at 533-34 (internal quotation marks omitted). When assessing superiority and "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Silvis satisfies the predominance requirement because liability questions common to the settlement class substantially outweigh any possible individual issues. Such common questions include whether Ambit Energy set its variable electricity rates in the manner it represented to its customers or whether it overcharged them for electricity. Silvis' claims and those of the class are based on the same legal theories and same uniform conduct.

Resolution of the claims of the settlement class is superior to individual law suits because it promotes consistency and efficiency of adjudication. Since the individual claims are

relatively small, without the class, individuals might lack incentive to pursue their claims. This resolution also provides specific relief to the class through well-defined administrative procedures, including the right to opt out or object. Finally, the settlement relieves the substantial judicial burden of repeated adjudications of the same issue.

Thus, the Court concludes that the class action meets the predominance and superiority requirements of Rule 23(b)(3).

### 3. Ascertainability

In addition to the Rule 23(a) and (b)(3) requirements, the Third Circuit imposes another requirement under Rule 23: ascertainability. <u>Byrd v. Aaron's Inc.</u>, 784 F.3d 154, 163 (3d Cir. 2015). In <u>Byrd</u>, the Third Circuit explained that "[t]he ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." <u>Id.</u> (internal quotation marks omitted).

In this case, the putative class is ascertainable because the class is made up only of those who subscribed to a specific energy program during specific periods of time, and Ambit Energy's customer billing records provide a reliable and

administratively feasible mechanism for identifying such individuals.

Based on the above, the settlement class satisfies the requirements of Rule 23(a) and (b)(3), as well as the Third Circuit's ascertainability requirement. Therefore, the Court will certify the class for the purposes of this settlement.

B. <u>Whether the Notice to the Class Members Was Adequate</u>

Having determined that the class may be certified, the Court next reviews the notice procedures implemented by Silvis. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." <u>Prudential</u>, 148 F.3d at 306. Rule 23 includes two provisions concerning notice of the class members.

First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts. Specifically, the Rule provides that such notice must, in clear, concise, and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) the class member's right to enter an

appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members. Fed. R. Civ. P. 23(c)(2)(B).

Second, Rule 23(e) requires notification to all members of the class of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." Prudential, 148 F.3d at 327 (internal quotation marks omitted).

In the Court's memorandum and order granting preliminary approval of the settlement, the Court approved notice by direct mail, periodical publication, a settlement-specific website, and a toll-free telephone number. At that time, the Court reviewed the parties' notice program, including the language of the notices and found that they were clear, included all requisite information, and met the requirements of Rule 23(c)(2)(B) and (e). As described above, Angeion Group has represented that it complied with the approved notice program and that notice reached the vast majority of class members due to its diligent efforts.

Accordingly, the Court finds that the notice program used in this case satisfied Rule 23(c)(2)(B) and (e) and was

reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, the class members' rights to opt out or to object, and the applicability of a final judgment on all participating class members. Fed. R. Civ. P. 23(c)(2)(B); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

A.    Whether the Proposed Settlement Is Fair and Reasonable

After class certification, the court must approve the settlement of a class action and determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). Prudential, 148 F.3d at 316-17. Where the parties simultaneously seek certification and settlement approval, the Third Circuit requires "'courts to be even more scrupulous than usual' when they examine the fairness of the proposed settlement." Id. at 317 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)). This heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members. Id. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh, 521 F.2d at 156.

In Girsh, the Third Circuit identified nine factors to
be considered when determining the fairness of a proposed
settlement: (1) the complexity, expense, and likely duration of
the litigation;(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery
completed; (4) the risks of establishing liability; (5) the
risks of establishing damages; (6) the risks of maintaining the
class action through trial; (7) the ability of the defendants to
withstand a greater judgment; (8) the range of reasonableness of
the settlement fund in light of the best possible recovery; and
(9) the range of reasonableness of the settlement fund to a
possible recovery in light of all the attendant risks of
litigation. 521 F.3d at 157. The Court addresses the Girsh
factors below, some individually, some together as a group.

    1.    The Complexity, Expense, and Likely Duration of
          the Litigation

    The first Girsh factor is the complexity, expense, and
likely duration of the litigation, which aims to take into
account the "probable costs, in both time and money, of
continued litigation." In re Cendant Corp. Litig., 264 F.3d 201,
233 (3d Cir. 2001) (internal quotation marks omitted).

    This case has been pending since August 27, 2014. Its
continuation would necessitate complex, expensive, and lengthy
litigation. As shown by its previous responsive briefs, Ambit

Energy would have defended itself vigorously. The parties would have been required to file comprehensive class certification briefs and the Court would have held a hearing with witnesses on the issue. The parties also would have faced the possibility of a Rule 23(f) interlocutory appeal of the certification decision. After resolution of this issue, the parties would still be required to perform merits and expert discovery, file additional dispositive motions, and face a trial. The likely prospect of continued protracted litigation weighs strongly in favor of approving the settlement.

### 2. The Reaction of the Class to Settlement

The second Girsh factor to be considered is the reaction of the class to the settlement. "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." Gen. Motors, 55 F.3d at 812.

Of the 12,542 claims received, only ten class members requested exclusion from the class and no members objected to the settlement or attorney's fee petition. Thus, this factor also weighs heavily in favor of the settlement. See, e.g., Prudential, 148 F.3d at 318 (affirming district court's conclusion that class reaction was favorable when 19,000 out of 8,000,000 class members opted out and 300 objected); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118–19 (3d Cir. 1990) (noting

that the second Girsh factor "strongly favor[ed]" settlement
where "only twenty-nine" "of 281 class members" objected to the
settlement's terms).

### 3.   The Stage of the Proceedings

The third factor to be considered is the stage of the
proceedings and the amount of discovery completed. This Girsh
factor requires the Court to evaluate whether Plaintiffs had an
"adequate appreciation of the merits of the case before
negotiating" settlement. Prudential, 148 F.3d at 319 (internal
quotation marks omitted).

Here, the settlement was finalized only after a
rigorous mediation during which the parties engaged in analysis
of the substantive claims and defenses in the case. Moreover,
the case has been pending since August 2014 and the parties have
briefed multiple dispositive motions which afforded counsel an
opportunity to assess the strengths and weaknesses of the case.
Finally, class counsel has litigated similar cases and has a
thorough understanding of the factual and legal issues involved.
The Court concludes that this factor weighs in favor of
settlement and that the parties sufficiently appreciate the
merits and dangers of the case.

### 4.   The Risks of Continued Litigation

The fourth, fifth, and sixth Girsh factors are the
risks of establishing liability, the risks of establishing

damages, and the risks of maintaining the class action throughout the trial. These factors "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." Prudential, 148 F.3d at 319. As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." Gen. Motors, 55 F.3d at 814. As to damages, this factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." Cendant Corp., 264 F.3d at 238-39 (quoting Gen. Motors, 55 F.3d at 816). Finally,

> [b]ecause the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor [concerning the risks of maintaining the class action through trial] measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial.

Warfarin, 391 F.3d at 537 (internal quotation marks and citations omitted).

As discussed above, the parties have had sufficient opportunity to evaluate the strengths and weaknesses of the case, including the risks of continuing the litigation. Such risks include the possibility of class decertification or that conflicting state laws would hamper certification. Silvis would

also risk a finding that she failed to establish that Ambit Energy breached its contract or overcharged the class members for electricity. The class members would also run the risk of being unable to adequately prove their individual damages. The Settlement Agreement provides a remedy now to all class members, rather than risking an uncertain result after years of expensive litigation. Thus, these factors weigh in favor of the settlement.

### 5. The Ability of the Defendant to Withstand Greater Judgment

The seventh factor regards the ability of the defendant to withstand a greater judgment. This factor is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement," Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). That is not the case here.

Ambit Energy is capable of withstanding a larger judgment. However, it would still not be required to pay more than the class members are entitled. See Warafin 391 F.3d at 538 (finding this factor irrelevant since the defendant would not have to pay more than what the class members were owed). The Court finds that this factor does not weigh heavily for or against the settlement. See, e.g., In re Processed Egg Prod.

<u>Antitrust Litig.</u>, No. 08-MD-2002, 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016) ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement.").

6.  <u>The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation</u>

The eighth and ninth factors are the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. These factors examine "whether the settlement represents a good value for a weak case or a poor value for a strong case." <u>Warfarin</u>, 391 F.3d at 538.

In light of the risks of establishing liability and damages at trial, Silvis believes that the settlement falls within the range of reasonableness and is better than the other possible alternatives, which include little or no recovery. Although a verdict in this case might possibly have been greater than the value of the settlement, such a verdict would still face the risk of being overturned on appeal. The proposed settlement gives the class members significant relief at the

earliest possible time, and, thus, these factors weigh in favor of settlement.

It is clear that upon balancing of the <u>Girsh</u> factors, they tip strongly in favor of the settlement. Thus, the Court finds the settlement fair and will approve the Settlement Agreement.

D. <u>Attorney's Fees, Costs, and the Service Award</u>

When class counsel successfully settle a class action, they may apply for reasonable attorney's fees and nontaxable costs. Fed. R. Civ. P. 23(h). "[A] thorough judicial review of fee applications is required in all class action settlements." <u>Gen. Motors</u>, 55 F.3d at 819. The amount of the fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes finding of fact not clearly erroneous[.]" <u>Sullivan</u>, 667 F.3d at 329 (internal quotation marks and citation omitted).

In the Settlement Agreement, Ambit Energy agreed to separately pay Silvis' service award of up to $5,000 and attorney's fees and costs of up to $1,450,000. As of the time Silvis filed her motion for attorney's fees, class counsel contended that their fee loadstar was $1,367,506 with $39,705.90 in expenses. At the final settlement approval hearing, counsel represented that the loadstar likely had increased by $30,000 or $40,000, and that, by the end of case, it would likely increase

by a similar amount. Counsel reported that the then current loadstar figure represents 2,187.8 hours of work at an average rate of $623 per hour.

In that attorney's fees are not being paid from a common fund, the use of the loadstar method is appropriate. "The lodestar method is 'designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." In re Diet Drugs, 582 F.3d 524, 540 (3d Cir. 2009) (quoting Prudential, 148 F.3d at 333). "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid Corp. Secs. Litig., 396 F.3d 294, 305 (3d Cir. 2005). The lodestar is then subject to a multiplier when justified by the specific facts of the case. See, e.g., id.; Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp., 540 F.2d 102, 117-18 (3d Cir. 1976).

The Court concludes that given the scope and complexity of the litigation, including the time spent on pre-litigation investigation and research, motions practice, and mediation, that the hours spent by counsel are reasonable.

The Court further concludes that the hourly rates charged by class counsel, and which average $623 per hour, are "reasonable in light of the given geographical area, the nature of the services provided, and the experience of the attorneys." In re AT&T Corp. Secs. Litig, 455 F.3d 160, 164 (3d Cir. 2006) (internal quotations and citations omitted); see also, e.g., Moore v. GMAC Mortg., No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (finding reasonable rates between $325 and $860 per hour); In re Merck & Co., Inc. Vytorin Erisa Litig., No. 08-285DMC, 2010 WL 547613, at *13 (D.N.J. Feb. 9, 2010) (approving rates up to $835 per hour).

The loadstar reported in the motion was $1,367,506. In that counsel seeks $1,450,000 in fees, the multiplier at that time was 1.1. However, given the additional time spent on the case, and the additional work left to be performed, it is likely that the multiplier will ultimately be one. This further indicates that the fees requested are reasonable. See In re Cendant Corp. Prides Litig., 243 F.3d 722, 742 (3d Cir. 2001) ("[m]ultipliers ranging from one to four are frequently awarded") (internal quotation marks and citation omitted). The Court concludes that, based upon the loadstar method, the attorney's fees requested are reasonable.

The Court has also determined that counsel's fee meets the Gunter/Prudential factors. See In re Diet Drugs, 582 F.3d at

541. These factors were formulated for use with the percentage-of-recovery method for determining fees, but are also helpful when utilizing the loadstar method. The factors are: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by class counsel, (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. Id.

Applying the Gunter/Prudential factors to this case: (1) the total class is 73,676 and the settlement will compensate all class members who submitted a timely claim form (of which there were 12,542); (2) there have been no objections to the settlement and only ten opt-outs; (3) class counsel is nationally recognized in consumer class actions and Ambit Energy was represented by experienced and skilled attorneys; (4) the case is complex and the parties have already expended

significant time and resources on it, and would expend far more
if it went to trial; (5) there is a real risk of non-payment in
that class counsel's fee is fully contingent and there is a
genuine risk of no recovery; (6) class counsel's time and
expense records show a substantial expenditure of hours since
2014, including extensive pre-suit investigation, opposition to
dispositive motions, appellate briefing, discovery, and
settlement negotiations; (7) The award is similar to others
obtained, see, e.g., Wise v. Energy Plus Holdings LLC, 11-cv-
7345 ECF No. 74 (Sept. 17, 2013 S.D.N.Y. 2013) (approving
$3,300,000 in fees in a similar case with an economic value of
$12,478,451 to $14,314,142); (8) no work was performed by other
groups such as government agencies; (9) had Silvis won at trial,
class counsel's contingency fee would have been higher than what
they now seek in that it would have been a third of the
estimated $9,300,000 full recovery; and (10) while the
settlement terms are beneficial, it is not clear to the Court
how they are particularly innovative. In weighing these factors,
all support the fee request except for the final factor, which
is neutral.

Silvis' counsel also represented that the $39,705.90
in costs consists of standard expense items such as copying
fees, expert fees, computerized research, travel, and discovery
expenses. The Court recognizes that in bringing the action to a

close, counsel will incur additional expenses. After examining the records provided by counsel, the Court concludes that these costs are reasonable.

Finally, class counsel seeks a $5,000 service award for Silvis. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation and [ ] reward the public service of contributing to the enforcement of mandatory laws." Sullivan, 667 F.3d at 333 n.65 (internal quotation marks omitted).

The support for Silvis' contributions is not detailed. Counsel declared that "Ms. Silvis came forward to prosecute this litigation for the benefit of the class" and that she "provided a valuable service to the class in both the prosecution and settlement of this action, including producing documents and answering interrogatories. Although her scheduled deposition was cancelled due to the parties' settlement negotiations, Ms. Silvis was fully prepared to provide testimony on behalf of herself and the class." ECF No. 92-2 pp. 2-3. The Court finds that counsel has not fully justified a $5,000 service award. However, the Court will award Silvis $2,500, which the Court concludes is commensurate with the apparent time and effort expended by her.

## II.  CONCLUSION

The Court finds that the requirements for class certification under Rule 23 have been met for settlement purposes. The Court further concludes that the Settlement Agreement is fair, reasonable, and adequate and, thus, will approve it. Finally, the Court finds that the requests for counsels' fees and costs, and a $2,500 service award for Silvis are reasonable. As a result, the Court will grant Silvis' Unopposed Motion for Final Approval of Class Action Settlement and Unopposed Motion for Approval of Attorney's Fees and Expenses.

An appropriate order follows.